Argued October 16, affirmed December 31, 1973

BEECHER, *Appellant, v.* MONTGOMERY
WARD & CO., INC., *Respondent.*

517 P2d 667

*Raul Soto-Seelig,* Portland, argued the cause for appellant. With him on the briefs was Paul J. Rask, Portland.

*Ridgway K. Foley, Jr.,* and *Gino G. Pieretti, Jr.,* Portland, argued the cause for respondent. With them on the brief were Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN, HOWELL, and BRYSON, Justices.

HOLMAN, J.

Plaintiff brought an action for libel against defendant, seeking both general and punitive damages. The jury returned a verdict for defendant and plaintiff appealed.

Plaintiff owed defendant several hundred dollars on an account for merchandise. The parties compro-

mised the claim for $439, and plaintiff paid the compromised amount. Thereafter, defendant attempted to collect what would have been the balance of the bill had it not been compromised and finally wrote the following letter to plaintiff's employer:

"Jim Fisher Imports
106 N. E. Grand
Portland, Oregon

Re: James A. Beecher
Rt. 1, Box 294E
Estacada, Or 97023
780-281-081
Amt. of Mo. Payment
$ 52.00
Balance on Account
$204.50

"For the past several months we have been carrying a delinquent account in the amount indicated which is due from the above individual.

"We understand this person is employed by you and we would appreciate your cooperation in bringing this matter to his attention and requesting him to pay his obligation without further delay.

"Thank you for your assistance."

The letter, when received by plaintiff's employer, was read by its manager and its service manager.

■■ Before proceeding to plaintiff's assignments of error, we must decide whether the letter is capable of being the subject of a libel. Defendant contends that it is not, and, if defendant is correct, our inquiry is at an end. A defamatory communication is defined by 3 Restatement, Torts 140, § 559, as follows:

"A communication is defamatory if it tends so to harm the reputation of another as to lower him

in the estimation of the community or to deter third persons from associating or dealing with him."

The court determines whether a communication *is capable* of a defamatory meaning. If the court determines that it is, the matter is then submitted to the jury for a determination of whether a defamatory meaning *was understood* by the recipients. *Hinkle v. Alexander,* 244 Or 267, 277-78, 411 P2d 829, 417 P2d 586 (1966); 3 Restatement, Torts 304, § 614. It is our opinion that the present communication could have been understood by the recipients in a defamatory sense as being derogatory of plaintiff's credit. In *Hinkle v. Alexander,* supra at 279, we stated:

> "In *Hudson v. Pioneer Service Co., supra,* 218 Or 561, we held that Hudson had not been defamed by a publication that he had failed to pay bills because he was not in a trade or business to which credit was essential. By the rule we have here adopted it would be immaterial whether or not plaintiff was in a trade or business. If the publication carries with it a fair implication that the person's credit cannot be trusted it should make no difference if he is or is not in a trade or business. If he is defamed he should be entitled to redress."

Defendant argues that there is no proof of defamation because no one testified that he understood that plaintiff's credit was the subject of distrust. The jury does not have to have specific testimony to this effect because it may draw such a conclusion from all the circumstances surrounding the communication and the relations of the parties. The jury could have drawn the conclusion that plaintiff's employer understood the defendant to be saying that plaintiff was "poor pay" and would not honor his just debts without pressure from his employer. The employer did not have to testify to

this understanding in order for the jury to determine its existence.

■ If the communication was capable of a defamatory meaning and was so understood by the recipients, damage is assumed although no special harm or loss of reputation results therefrom. Since *Hinkle* we have been committed to the rule of 3 Restatement, Torts 165, § 569, which is:

> "One who falsely, and without a privilege to do so, publishes matter defamatory to another in such a manner as to make the publication a libel is liable to the other although no special harm or loss of reputation results therefrom."

Plaintiff's first assignment of error concerns the exclusion from evidence of the testimony of a witness, who was unrelated to the present transaction, that the evening before he had been served with process in an action on a Montgomery Ward bill which he had previously paid. Plaintiff contends that the evidence relates to malice and punitive damages because it shows a method of doing business whereby accounts which have previously been paid are attempted to be collected a second time.

■ Generally, other conduct or acts of alleged wrongdoing which have no direct relation to the controversy being tried are of insufficient relevance to be admissible. However, in some instances, evidence of other acts similar to those in controversy are admissible to prove plan, scheme, and method of operation or intent. *Karsun v. Kelley*, 258 Or 155, 160, 482 P2d 533 (1971). In such latter situations, the relevance is weighed against the potential irrelevant use that can be made of the information considering that, in most instances, proving that defendant is a bad man or has

been guilty of other thoughtless, negligent, or illegal conduct is extremely prejudicial. *Kelty v. Fisher,* 101 Or 110, 117-18, 199 P2d 188 (1921). In the present case, we hold that the trial court properly excluded the offered evidence. The size of defendant's operation is such that the occasion of another instance in which defendant attempted to collect a bill that was already paid is of slight relevance and would have been extremely prejudicial.

■ ■ Plaintiff next contends that the trial court should have stricken the allegation in defendant's affirmative defense that the letter was sent as the result of defendant's error because there was no evidence of such an error. The motion was made after both parties had rested. The allegation was not properly included in defendant's answer because it was provable under a general denial. However, there was no motion at the appropriate time to strike it for that reason. There was evidence that it was customary for defendant to keep an abstract of all conversations, letters, and dealings with each customer's account and that in this particular case the abstract relative to plaintiff's compromise of his account could not be found. From this testimony the jury could infer that a mistake had been made, and we cannot say that there was no evidence that defendant made a mistake.

■ Plaintiff also contends the trial court erred in failing to give a requested instruction that each party has the burden of proving by a preponderance of the evidence any claim or contention he has made in his pleadings and, in the absence of such proof, he cannot prevail as to the claim or contention. Plaintiff argues that this instruction was important because of the above-mentioned inclusion in defendant's affirmative

answer that the letter had been sent by mistake. Whether the letter in question was written by mistake has to do only with actual malice. Actual malice was relevant only to punitive damages. The jury awarded no actual damages. In the absence of actual damages, there was no basis for punitive damages, and an error related to punitive damages would be immaterial.

The next assignment claims the court erroneously instructed the jury as follows:

"Now, in order for defamatory material to be actionable, it must be published, and it must cause damages."

Plaintiff excepted as follows:

"We except to the instruction which went to the effect that in order for the letter to be published, it must cause damage, defining defamation."

Plaintiff now argues that the word "published" in the exception should have been "defamatory," but that the meaning of the exception was clear. Not only is the exception garbled, but it is much too terse to point out clearly to the trial judge what was claimed to be wrong. Exceptions should be reasonably clear so that this court can be sure that the trial judge, in the press of receiving many exceptions, understood exactly what was intended and thus had an opportunity to correct any mistake. *Wulff v. Sprouse-Reitz Co., Inc.*, 262 Or 293, 498 P2d 766 (1972). The alternative is the use of judicial time for a retrial when no one can be sure that the trial judge understood what was intended and thus had an opportunity to remedy any mistake that he may have made.

Plaintiff also contends the trial judge erred in not giving a requested instruction which told the jury

that the communication was defamatory. As previously pointed out, it is a question for the judge to decide whether the statement is capable of a defamatory meaning, and, if it is, it is then a question for the jury to decide whether it was understood in a defamatory sense by its recipients.

■ It is also claimed that the trial judge erred in his instruction on punitive damages and that he failed to give two proper requested instructions relating to punitive damages. Such errors, if made, could not be the basis for a reversal because, as previously indicated, no actual damages were awarded.

The judgment of the trial court is affirmed.