Argued April 8, affirmed September 3, 1976

SCHAFROTH, *Appellant,*

*v.*

BAKER, *Respondent, Cross-Appellant.*

553 P2d 1046

*Michael F. McClain,* Corvallis, argued the cause for

appellant. On the briefs were McClain, Brown, Evashevski & Marek.

*Mark D. Donahue,* Corvallis, arged the cause for respondent, cross-appellant. With him on the brief was Jack L. Joyce, Philomath.

Before McAllister, Presiding Justice, and Denecke, Holman, Tongue, Howell, and Bryson, Justices.

McALLISTER, J.

## McALLISTER, J.

This action for slander was brought by the plaintiff Arthur L. Schafroth against the defendant Karl Baker. The jury found in favor of Schafroth and awarded him $5,000 general damages and $12,500 punitive damages. A judgment was entered on the verdict and defendant thereafter filed a motion for a judgment notwithstanding the verdict and in the alternative for a new trial.

The trial court denied the motion for judgment notwithstanding the verdict, but allowed the motion for a new trial. Plaintiff appeals from the order granting a new trial.

The order granting a new trial recited that it was granted because it appeared to the court "that the jury was not properly instructed regarding the question of qualified privilege".[1]

The sole issue before us is whether the trial court erred in granting a new trial.

The only part of the record designated by the appellant is the trial court file and the instructions given to the jury and the exceptions thereto.

It is alleged in plaintiff's amended complaint that plaintiff was employed by Oregon State University and that "on or about May 5, 1974, the Defendant did maliciously with the intention of injuring the good name and character of the Plaintiff call the President of Oregon State University, Robert McVicar, [sic] and did tell him that the Plaintiff had misapplied O.S.U. Property for his own personal use and that the Plaintiff had a life raft located on his boat at Newport with O.S.U. labels on it."

It is further alleged that "the statements made by the Defendant were false and at the time Defendant

---

[1] The trial court, in a letter to counsel, stated only:

"The Court finds that its instructions on qualified privilege [were] in error and that Defendant is entitled to a new trial."

[ 41 ]

uttered them he knew that they were false and were published wrongfully and maliciously by the Defendant."

It is also alleged that "the statements were made and published maliciously, wilfully, and recklessly and Plaintiff is entitled to recover punitive damages in the sum of $25,000.00."

Plaintiff prayed for $5,000 general damages and the further sum of $25,000 punitive damages.

Defendant's amended answer contained a general denial and two affirmative defenses. The first alleged truth as a defense and the second alleged that defendant's "statement was made in good faith, without malice, as an expression of his opinion on a matter of vital public interest and concern."

Defendant, in his brief, does not rely on truth as a defense and we need not concern ourselves any further with that alleged defense.

Plaintiff contends that the trial court was wrong in granting a new trial because (a) the defendant was not entitled to have instructions on qualified privilege submitted to the jury; and (b) because the instructions of the trial court were "adequate when read with the court's total charge to the jury and upon the jury returning a verdict for the plaintiff on the issue of punitive damages." In other words, the plaintiff argues that any error in the instructions regarding qualified privilege became harmless when the jury found actual malice on which to return a verdict of punitive damages.

Plaintiff argues two propositions in support of his contention that the court erred in granting a new trial. Plaintiff first argues that defendant's statement to President MacVicar charged plaintiff with the commission of the crime of misapplication of entrusted property, ORS 165.095, and that the doctrine of qualified privilege is not available as a defense to an accusation of criminal conduct.

We will first consider plaintiff's contention that qualified privilege is not a defense to allegations of criminal conduct. The authorities are to the contrary. Prosser discusses the "public interest" privilege as follows:

> "The interest of the general public, as distinguished from that of any individual, has given rise to two qualified privileges, which often have been confused. One is broad as to what may be said, but narrow as to those to whom it may be communicated; the other is more restricted as to content, but broader as to publication. The first, sometimes called the 'public interest' privilege, involves communications made to those who may be expected to take official action of some kind for the protection of some interest of the public. * * *" Prosser, Torts 791 (4th ed 1971).

■ Defendant's statements charged the misappropriation of property of Oregon State University, which was obviously a matter of public concern. Such statements are qualifiedly privileged if they are made to a person authorized to act if the statements be true. Restatement of Torts, § 598, comment c. The rule at common law is stated thus in 50 Am Jur 2d 703, Libel and Slander § 198:

> "In the absence of malice, and if there has been no abuse of a privileged occasion, the defense of conditional or qualified privilege may extend to a communication that is false, even though it charges a crime. * * *"

See Annotation, *Defamation: Actionability of Accusation or Imputation of Shoplifing,* 29 ALR3d 961, 977 et seq, § 4.

We conclude that qualified privilege may be a defense to an accusation of criminal conduct.

We turn to the dual question of whether the trial court's instructions regarding qualified privilege were erroneous and, if so, whether the error was rendered harmless by the jury finding of actual malice as evidenced by its award of punitive damages.

[ 43 ]

The trial court's instructions regarding privilege were as follows:

"You are also instructed that in the plaintiff's complaint he alleges these statements were made maliciously, so it is necessary to instruct you as to what is meant by malicious. We are talking here about what is known as actual malice. Now, actual malice may be proved directly or indirectly, meaning it is not something which someone can see, so it is not the kind of thing that some one witness could come in here and say I saw malice, so the only way it can be proved here is by some form of direct evidence or indirectly. That is the direct evidence would concern itself with an evil motive or intent, that is, that there being proof from which it could be concluded that there was an evil motive or intent on the part of the person making the statement or it may be proved by legitimate inference or inferences which may be drawn from all the facts and circumstances in the case. It is for you, the jurors, to say whether under all the facts and circumstances as shown by the evidence in this case that actual malice on the part of the defendant toward the plaintiff has been proved. You are to judge from all the evidence whether actual malice existed or not.

"I further instruct you that some statements that are made which would otherwise be slanderous are privileged. That is, the law recognizes these as privileged because they concern a matter of public interest and they were made to a person with a duty regarding that public interest.

"If you find that the defendant's statements were privileged, that privilege then is a complete defense just as truth would be."

Plaintiff does not contend that these instructions are an accurate statement of the law. The trial court concluded, and we agree, that "the jury was not properly instructed regarding the question of qualified privilege". The instructions were inadequate in their treatment of "malice." The jury was told that malice was an "evil motive or intent," but the instructions did not explain, as discussed below, any of the various manifestations of an "evil motive or intent" which may result in the loss of a qualified privilege. Moreover, although the jury was told to consider malice in

connection with punitive damages, it was not instructed on the relationship of malice to the question of privilege.

Plaintiff contends that any errors in the instructions would not justify a new trial, as the verdict, which includes an award of punitive damages, indicates that the jury found that defendant was motivated by "actual malice" as defined by the trial court, and that this finding necessarily defeats defendant's claim of qualified privilege.

The protection of qualified privilege may be lost in a number of ways. The general rule is stated in Restatement of Torts § 599:

"One who publishes false and defamatory matter of another upon a conditionally privileged occasion is liable to the other if he abuses the occasion."

Comment a to that section summarizes a number of ways in which the privilege may be abused:

"* * * The unreasonable exercise of the privilege is an abuse of the occasion which defeats the protection otherwise afforded. The occasion may be abused because of the publisher's lack of belief or reasonable grounds for belief in the truth of the defamatory matter (see §§ 600-602); because the defamatory matter is published for some purpose other than that for which the particular privilege is given (see § 603); because the publication is made to some person not reasonably believed to be necessary for the accomplishment of the purpose of the particular privilege (see § 604); or because the publication includes defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the occasion is privileged (see § 605)."

The jury in the present case was told:

"You, as jurors, of course may award punitive damages only if you awarded general damages and if you find that the statements by the defendant were made *with actual malice.*" (Emphasis added.)

The trial court's instruction on malice, quoted above, defined it as an "evil motive or intent," without further elaboration. "Malice" in this sense is relevant to

qualified privilege only if the "evil motive or intent" preponderates over any legitimate purpose related to the privilege. In Prosser's words:

"* * * if the privilege is otherwise established by the occasion and a proper purpose, the addition of the fact that the defendant feels indignation and resentment toward the plaintiff and enjoys defaming him will not always forfeit it. Perhaps the statement which best fits the decided cases is that the court will look to the primary motive or purpose by which the defendant apparently is inspired. Discarding 'malice' as a meaningless and quite unsatisfactory term, it appears that the privilege is lost if the publication is not made primarily for the purpose of furthering the interest which is entitled to protection. * * *" Prosser, op cit supra at 794-795.

See, also, Restatement of Torts § 603, Comment a; 1 Harper and James, The Law of Torts, 451-452.

Courts have struggled with definitions of malice in many contexts, usually without conspicuous success. In defamation cases, it appears that the term has been used in at least three different ways. See Prosser, op cit supra at 794. We see no need to perpetuate its use in connection with qualified privilege. The approach taken by the Restatement of Torts provides a much more helpful framework for jury instructions. Using this framework, the jury could be told that certain occasions are privileged, with appropriate specific instructions to assist in determining whether such an occasion was involved in the case. It could then be given appropriate instructions on what constitutes abuse of the privilege and the consequent loss of its protection. The term "malice" as usually defined does not adequately call the jury's attention to the need for some relationship between the defendant's purpose and the purpose of the privilege, the defendant's belief as to the probable truth of the statement, the appropriateness of the scope of the publication, and other matters which are important in determining whether the defendant abused a privileged occasion.

If we were to assume in the present case that the jury

followed the trial court's instructions precisely, then we would have to conclude that the jury found that there was no privilege — that is, that the defendant's statements did not "concern a matter of public interest" or were not "made to a person with a duty regarding that public interest." Under the instructions given, if the jury had found both of these conditions satisfied it should have returned a verdict for defendant on the ground that privilege "is a complete defense just as the truth would be."[2] Since plaintiff himself alleged in the complaint that he was a public employee and that defendant told his superior that he had misapplied public property, it is difficult to see how the jury could possibly have failed to find that defendant's statement concerned a matter of public interest and was made to a person having a duty in that regard. Although the occasion was clearly privileged, as disclosed by the allegations and admissions in the pleadings, the jury's verdict demonstrates that the defense of privilege was rejected. The jury must have found that the privilege had somehow been lost or forfeited, even though it was not expressly instructed that loss of the privilege was possible.

As the only instruction given which could have had any conceivable bearing on that question was the instruction on malice, that instruction becomes crucial to the question of whether defendant was prejudiced in light of the jury's findings.

The jury was told to determine whether defendant acted with "an evil motive or intent," as the trial court defined "actual malice." It was not told that a finding of malice must depend on whether defendant's *primary* purpose in making the defamatory statement was improper and unrelated to the purpose of the privilege. When the verdict is considered in light of the instructions, it is possible that the jury found that defendant's defamatory statement was made with an "evil motive

---

[2]The quoted portion of the instruction is unduly favorable to defendant, as the pleadings disclose an occasion involving a qualified, rather than an absolute, privilege.

[ 47 ]

or intent" without ever considering whether he was also motivated by a concern for the protection of public property from misuse by public employees.

■   Because the record before us consists of only the trial court file and the jury instructions, we cannot assess the degree of likelihood that the jury reasoned as we have suggested. The limited record on appeal merely discloses the possibility. The trial judge, who heard all of the evidence, concluded not only that the instructions were erroneous, but, also, that the error may have misled the jury. Without a record of the proceedings at trial, we cannot say that conclusion was unjustified.

■   Some of the errors in the instructions were unduly favorable to defendant. Others were unduly favorable to plaintiff, particularly a definition of "malice" which did not inform the jury that it could find the existence of a bad motive and yet find for defendant, if defendant's primary purpose in making the statement was a proper one. As we have recently pointed out, although a new trial may be ordered only for prejudicial error, once it is established that error was committed,

> "* * * this court, in determining on an appeal from an order granting a new trial whether such error was so prejudicial as to prevent a party from having a fair trial, usually defers to the discretion of the trial court.* * *" *Beglau v. Albertus*, 272 Or 170, 181, 536 P2d 1251, 1257 (1975).

This deference is especially appropriate when the record before us is incomplete.

The order of the trial court granting a new trial is affirmed.