Argued and submitted August 29, reversed and remanded
November 5, 1979, reconsideration denied January 17,
petition for review denied February 20, 1980 (288 Or 571)

CUSHMAN, et al,
*Appellants,*
*v.*
DAY, et al,
*Respondents.*

(No. A7805-07992, CA 13541)

602 P2d 327

[123]

[124]

Joseph E. Isaac, III, Tualatin, argued the cause and filed the briefs for appellants.

James M. Callahan, Portland, argued the cause for respondents. With him on the brief was Gearin, Landis & Aebi, Portland.

Before Buttler, Presiding Judge, Gillette, and Roberts, Judges.

GILLETTE, J.

## GILLETTE, J.

Plaintiffs appeal the judgment order sustaining defendants' demurrer to all four causes of action alleged in plaintiffs' Second Amended Complaint. We reverse.

The Second Amended Complaint is taken as true for the purpose of this appeal. It alleges the following facts:

Plaintiffs are police officers employed by the Eugene Police Department. On March 30, 1977, they reported to the scene of a strike by defendant Teamsters Local 670 members against a Eugene business establishment. They were requested by the employer to prevent picketers from obstructing the free flow of traffic and personnel into and out of the employer's premises. In the course of so doing certain of the picketers were arrested on charges of disorderly conduct.

Later the same day defendant Day, a Teamster official, made certain statements to the news media regarding the conduct of the police officers involved. Some of these statements were broadcast over a Eugene radio station and others were published in the Eugene *Register-Guard* newspaper. Day also sent a telegram to Police Chief Brooks and Eugene Mayor Gus Keller that day and a mailgram to Police Chief Brooks on the following day.

Plaintiffs have alleged in their Second Amended Complaint that certain of the statements made by Day were false and defamatory. They also allege that the statements were made with malice and with knowledge of their falsity or with reckless disregard for their truth; that the statements were made of and concerning plaintiffs; that defendant Day was acting within the scope of his employment with defendant Teamsters Local 670 when he made the statements; and that plaintiffs were damaged by the statements.

Defendants filed a demurrer which was sustained

[125]

as to all four causes of action alleged in the complaint. We treat each cause of action separately inasmuch as each involves a separate communication.

Plaintiff's first cause of action alleges defamation in certain statements made during an interview broadcast over radio station KASH.[1] Defendants' demurrer to this cause of action is based upon two grounds: that the statements in question are a non-actionable expression of opinion by Day and that they are a general attack on the operation of government rather than defamation of any individual and thus protected by the First Amendment.

Whether a statement is *capable* of bearing a defamatory meaning is a question of law for the court. However, if capable of such a meaning, whether or not the statement is actually defamatory is generally a question for the finder of fact. *Beecher v. Montgomery Ward & Co.*, 267 Or 496, 517 P2d 667 (1973); *Hinkle v. Alexander*, 244 Or 267, 417 P2d 586 (1966).

We find that it is possible to read certain of defendant Day's statements as implying undisclosed defamatory facts. For example, the statement,

"* * * There'll be criminal charges filed against every officer that was out there this morning * * * *"

implies knowledge of specific but unarticulated facts showing the commission of one or more crimes by each

---

[1] Defendant Day is specifically alleged to have said,

"We will prosecute each and every officer that oversteps his authority like we are right now. There'll be criminal charges filed against every officer that was out there this morning, including the Sergeant, the Police Chief and the Mayor of this city.

"Police Chief is taking it as a minor incident, the person had cuffs on is going to be in the hospital for two days, ah, to me, ah, frankly, ah, the courts ought to start taking a look at what's happening to the police in this community. It's, ah, as far as I'm concerned they, every one of 'em, ought to be put in before a judge for criminal charges.

"It just makes us all the more, ah, stronger and all they've done is, is make the people, ah, suspect the fact that law and order evidently is only for the Chef Francisco Company, not for people who live in the community, an [sic] law and order is for everybody."

[126]

of these plaintiffs. Day's additional observation that a person who had been handcuffed would require two days of hospitalization strengthens this implication. We cannot say as a matter of law that all of the statements made in the radio broadcast were non-actionable.

Defendants also contend that the statements made in the radio broadcast are criticisms of government conduct which are protected speech. *See New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). We agree that some of the statements alleged in this cause of action are impersonal criticisms of the police department in general and are not directed towards plaintiffs in particular.[2] However, there are other allegations which, as noted, are capable of defamatory meaning and which can be interpreted as directed toward these plaintiffs specifically. The trial judge erred in sustaining the demurrer to the first cause of action.

The demurrer to the second cause of action which concerns statements reported in the Eugene *Register-Guard*[3] is based on the contention that none of the

[2] For example, the statement "* * * the courts ought to start taking a look at what's happening to the police in this community" is precisely the sort of statement the U. S. Supreme Court was at pains to label as constitutionally protected in *Sullivan.*

[3] Exhibit B to plaintiffs' Second Amended Complaint contained the article in question:

"Page 6D REGISTER-GUARD, Eugene, Ore., Thusday, [sic] March 3, 1977.
    "TEAMSTERS PLEDGE TO SUE POLICE, MAYOR OVER
                    PICKET ARRESTS

"By Ed Kenyon, of the Register-Guard                    .
"Teamsters Union official L. B. Day said today the union will file criminal charges against Eugene police and Mayor Gus Keller for what the union official claims was the deliberate beating of picketers who are on strike against the Chef Francisco food processing plant.

"Day said seven of eight picketers arrested Wednesday morning for disorderly conduct suffered injuries when police used what the Teamsters official said was unprovoked force in making the arrests. Several required medical treatment, he said.

"The eight picketers pleaded innocent to the charges in Eugene

Municipal Court Wednesday afternoon and were released after posting bail.

" 'This police chief and his force are a disgrace,' Day declared. 'We had a peaceful picket line until he sent his thugs down there.'

"Eugene Police Chief Pierce Brooks said after meeting this morning with officers involved in the arrests: 'After listening to them, I can only commend them for their demeanor, considering what they had to go through.'

"Brooks said police made the arrests when the pickets refused to move to permit a car to enter the company property at 1400 Cross St. and after several picketers prostrated themselves on the ground in front of the vehicle when police attempted to move them.

"Day contested the police version. 'They had 45 police with helmets and billy clubs down there, and they waded into the pickets without saying a word to them,' Day declared. Police said 12 men and two sergeants were at the scene.

"According to Day, Theresa Ferguson, 51, of 960 N. 26th St., Springfield, one of the pickets arrested for disorderly conduct, was 'knocked down three times and beat into the ground' by officers at the direction of a sergeant. He said she has visited a hospital twice for treatment of shoulder, arm and hip injuries.

"He said another arrested picketer, Fern Brown, 39, of 1459 City View St., Eugene, was jumped at the same time as Ferguson and was 'beaten into the ground' by officers at the direction of a sergeant.

"Day said Elizabeth McFarland, 28, of 2707 Friendly St., Eugene, who was charged with resisting arrest as well as with disorderly conduct, was pulled down the street by an officer and suffered a broken tooth, scratches and bruises.

"Ingrid Bachmeier, 44, of 2240 Val Halla, Eugene, another picketer who was arrested, was jumped by six police officers and was knocked to the ground, Day said. He said she was 'handcuffed so brutally that her wrists are swollen and black and blue.'

"Day contended the five women pickets who were arrested, including Danzel Maxine Green, 52, of Parkdale, were accosted by police to provoke the men picketing. When the men responded, pickets Albert McNurlin, 25, of 251 McKinney Loop, Eugene; William Douglas Ekstein, 26, of 2834 Crocker St., Eugene, and David Booth, 24, of 141 Tatum St., Eugene, were 'all hit over the head with billy clubs' and were arrested, Day said.

"The police chief said the pickets showed no evidence of injury, except for one picket who showed police that a tooth was missing.

" 'I can show a missing tooth, too, if you want,' Brooks rejoined. 'When people fall down on sidewalks [sic] and driveways, they could hurt themselves.'

"The police chief said officers will continue to observe the picket line from a distance unless they are called in by either the union or by the management of the struck frozen food processing plant.

"Picketers showed up at the plant for the first time Sunday night after a union strike vote earlier in the day. A number of picket line incidents have been reported starting Tuesday."

[128]

laintiffs was named or otherwise personally iden-
ified in the statements and that none of the state-
ments could reasonably be understood as having spe-
ial reference to any of the individual plaintiffs. For
tate law purposes, however, plaintiffs have met their
urden under ORS 16.530(1)[4] which requires only that
hey allege that the defamatory statements were made
oncerning them. The statements in question made
harges of serious misconduct by the police who were
resent at the site of the picketing, and plaintiffs
llege that they were the officers involved.

It is true that under this second cause of action, no
pecific instance of misconduct is charged against any
articular individual. However the statements read
ogether charge misconduct of the group as a whole.
he group is made up of 13 police officers. When all or
 significant portion of a small group are defamed,
ach individual in the group may be found to have
een defamed. *See Restatement (Second) of Torts,* sec-
on 546A(b) and (c); *Neiman-Marcus v. Lait,* 13 F.R.D.
11 (S.D.N.Y. 1952); *Farrell v. Triangle Publications,
nc.,* 159 A2d 734 (Pa. 1960); *see also Rosenblatt v.
aer,* 383 U.S. 75 (1966). It is possible in reading the
ntire article to conclude that all of the officers pre-
nt, or the majority of them, were involved in the
isconduct alleged.

There is a constitutional dimension to defendants'
osition concerning this second cause of action. Imper-
onal attacks upon government and its operations may
ot be the subject of an action for defamation. The
atements must be made "of and concerning" the
aintiffs. *New York Times Co. v. Sullivan, supra.* The

---

[4] ORS 16.530(1) provides:

"(1) In an action for libel or slander it shall not be necessary to
state in the complaint any extrinsic facts for the purpose of showing
the application to the plaintiff of the defamatory matter out of which
the cause of action arose; but it shall be sufficient to state generally
that the same was published or spoken concerning the plaintiff. If such
allegation is controverted, the plaintiff shall be bound to establish on
the·trial that it was so published or spoken."

inquiry as to whether certain statements were made "of and concerning" a plaintiff is, however, usually one of fact. *See New York Times Co. v. Sullivan, supra* 376 US at 288; *Rosenblatt v. Baer, supra* 383 US at 81. The allegations here were sufficient to raise that issue of fact. The trial court erred in sustaining defendants' demurrer as to this cause of action.

As to plaintiffs' third cause of action, defendants' demurrer is based upon the same contentions already discussed. We resolve the questions in the same way. The statements alleged in the third cause of action[5] contain a general allegation of brutality by the police officers present along with specific examples of such brutality. Not all can be classified as opinion or as an impersonal attack on government as a matter of law. Although no specific officer is named, the group is sufficiently small that they all may be defamed by the statements made.[6]

---

[5] The communication alleged in Count 3 is set out in Exhibit C to the Second Amended Complaint:

"342P PST Mar 30

"PMS Chief of Police Pierce Brooks, DLR
"City Hall
"Eugene, OR 97401

"cc. to Mayor Gus Keller

"This is to notify you we believe a meeting between you and Teamsters Local 670 is imperative as a result of a misconduct of your police force on March 29 and 20. [sic] It is apparent your officers have been authorized to brutalize pickets to such a degree that one woman was beat up by 6 policemen and had a tooth knocked out while doing nothing but standing on the sidewalk in addition to this a sergeant in charge this morning ordered his men to beat them in the ground another officer thinking it was funny grabbed a woman be [sic] both breasts and yanked her down the street furthermore a policewoman thinking that was funny grabbed a woman picket by the hair the conduct of your police force is reprehensible it appears law enforcement is dead in Eugene and neither you or your police chief have control for all these reasons we intend to file criminal proceedings against your Gestapo police."

[6] We do agree, however, that statements such as "* * * it appears law enforcement is dead in Eugene and neither you nor your police chief have control" do fall into the category of impersonal attacks which are not actionable.

Defendants also contend that this communication and that alleged in the fourth cause of action[7] are absolutely privileged and, therefore, not actionable. The communications do enjoy at least a qualified privilege because they were made to "those who may be expected to take official action of some kind for the protection of some interest of the public." Prosser, *Torts* (4th ed. 1971); *see also Demers v. Meuret*, 266 Or 52, 512 P2d 1348(1973); *Schafroth v. Baker*, 276 Or 9, 553 P2d 1046 (1976). A qualified privilege, however, may be lost by the presence of actual malice. *Demers v. Meuret, supra.* Plaintiffs have alleged malice on the part of defendant Day.

Defendants cite, *inter alia, Ramstead v. Morgan*, 219 Or 383, 347 P2d 594 (1959), where it was held that the absolute privilege that applies to statements made in the course of, or incident to, a judicial proceeding also extends to quasi-judicial proceedings. *Ramstead* involved a complaint to the Lane county grievance committee of the Oregon State Bar. The court held that the relevant statements made in a complaint designed to initiate quasi-judicial action by the committee were also protected by absolute privilege. However, *Demers v. Meuret, supra,* distinguished between occasions calling for absolute privilege and those calling for qualified privilege, and held that every com-

---

[7] The communication alleged in Count 4 is set out in Exhibit D to the Second Amended Complaint:

"935A PST Mar 31 1977

"PMS Pierce Brooks, Chief of City Police, RDM report delivery by mailgram, dlr
777 Pearl St
Eugene, Or 97401

"We acknowledge your telegram at this point no one has indicated to meet with us by an assistant manager

"Your cover-up of the brutality of yesterday indeed will be answered by criminal charges to the officers

"The topics are just one can you or can you not control your police force

"That seems to be clear you cannot

"LB Day Secretary Treaurer Teamsters Local 670
2373 Oakmont Way Eugene Or 97401"

[131]

munication to one who is in a position to take action on the public's behalf is not absolutely privileged.

In contrast to the circumstances in *Ramstead*, the communications alleged in plaintiffs' third and fourth causes of action here were not made in the course of, nor did they necessarily seek to initiate, any judicial or quasi-judicial action, even assuming that the mayor and police chief would be proper persons to receive such communications. Both the telegram and the mailgram state that defendants intend to file criminal charges against the officers. They do not on their face request that either the police chief or the mayor investigate possible criminal conduct of the officers or initiate any charges against them individually or as a group, although either or both communications *could* be interpreted to have that purpose. The intent of the sender not being apparent on the face of the documents, the matter becomes a jury question.

Should a jury find that the communications were not intended to initiate official action it would follow that they were only conditionally privileged and that the privilege would be lost if the communications were made with malice. The question of malice is also one for the trier of fact. The trial court should not have sustained the demurrer to plaintiffs' third cause of action.

Defendants' final contention as to the fourth cause of action is that it criticizes only governmental action or, if it is directed at any individual, it is directed at the police chief who is not a party to this action. We hold, however, that the statement "Your cover-up of the brutality of yesterday indeed will be answered by criminal charges to the officers" may be interpreted as charging the officers involved with criminal conduct and, therefore, may be defamatory to plaintiffs.

In conclusion, we find that all four parts of plaintiffs' Second Amended Complaint state a cause of

ction and that defendants' demurrer should therefore
ave been overruled.

Reversed and remanded for further proceedings.