Argued and submitted October 15, 1979, affirmed in part; reversed in part and remanded February 5, 1980

CUSHMAN, et al,
*Appellants,*

*v.*

EDGAR, et al,
*Respondents.*

(No. A7805-07990, CA 14170)

605 P2d 1210

Joseph E. Isaac III, Tualatin, argued the cause for appellants. With him on the briefs was Erickson & Greer, Tualatin.

Michael Lehner, Portland, argued the cause for respondents. On the brief were E. Pennock Gheen and Hershiser, Mitchell, Mowery & Davis, Portland.

Before Tanzer, Presiding Judge, and Thornton and Campbell, Judges.

THORNTON, J.

## THORNTON, J.

This is an action for alleged defamation of plaintiffs by defendant labor union and one of its officers. Plaintiffs are Eugene police officers who were called to the scene of a strike.[1] The trial judge sustained defendants' demurrers to each of the three separate causes of action set forth in plaintiffs' third amended complaint. Plaintiffs appeal from the judgment orders. We affirm in part and reverse and remand in part.

On March 30, 1977, plaintiff police officers reported to the scene of the dispute where members of Local 670 Teamster's Union were picketing. The union was affiliated with defendant Joint Council of Teamsters No. 37. In response to a complaint by the employer that union pickets were obstructing the free flow of traffic into and out of the plant, the police proceeded to arrest several pickets for disorderly conduct.

On or about April 8, 1977, defendant Edgar wrote and sent a letter to Governor Robert Straub, complaining of the conduct of the police officers involved and requesting the Governor to order the state Attorney General to conduct an investigation of the incident.[2]

---

[1] A companion case involving this same incident but different facts was before this court earlier. *See Cushman v. L.B. Day,* 43 Or App 123, 602 P2d 327 (1979), *rev den* 288 Or 571 (1980).

[2] The portion of the challenged letter set forth in plaintiffs' complaint reads as follows:

"A. The reason for this request is the fact that, on March 29th and 30th, with no provocation, the Eugene police force posted forty-five steel helmeted police officers who were given instructions to use billy clubs on the Eugene picket line.

"B. The orders to the police issued on site were to beat the pickets into the ground. A series of events occurred during this period and here are some examples:

"One lady was dragged by the breast by a male police officer while a woman police officer pulled her by the hair. Another lady had six officers jump on her and push her face into the ground and she was so mauled she is still on crutches. Another lady was pushed to the ground by a police officer and then beaten down by a billy club because she had fallen down. The officers at no point made any explanations for their actions other than they intended to clear the picket line.

On or about April 14, 1977, an article strongly criticizing the Eugene police was printed in the Oregon Teamster, a newspaper published and distributed by the defendant Council.[3]

"In other words, the action was made on the pickets with no provocation. The pickets were not formally arrested until they arrived at the City Hall. One woman was so brutalized by the application of hand cuffs that her wrists are still swollen.

"C. He had forty-five officers at the site who entered into a labor dispute with absolutely no legal or moral right.

"D. It is our opinion that the Eugene police force acted with excessive force with actions at best that are a disgrace to law enforcement in Oregon and, at worst, are criminal in intent. The Joint Council of Teamsters does not intend to stand idly by and see our membership treated as animals or as second-class citizens who can be beaten into the ground like dogs. It is our position a thorough review of these actions should be made and a prosecution of the officers and city administration made for their outrageous actions."

[3] The portion of the challenged newspaper article set forth in plaintiffs' complaint reads as follows:

"A. But by 7:30 a.m. the scene in front of Chef Francisco's, in Eugene, was of the brutal beating, stomping and manhandling.

"B. At 7 a.m. the six policemen that had been observing the activity were lingering on the south edge of the company parking lot as though trying to find something to occupy their time. Thirty minutes later it was established that a force of better than 45 policemen equipped as though to put down a riot appeared from cars and two police vans.

"Witnesses explain that they barely arrived on the scene before they started pushing selected women pickets to the ground without cause. A few men, both bystanders and pickets, attempted to aid the ladies to their feet, but were rewarded by also being shoved and handcuffed by the police.

"C. One woman was also charged with resisting arrest when she attempted to defend herself.

"D. She explained that during that time she was familiar with German Storm Troop tactics, but never witnessed a sight as frightening as that that took place March 30th. She described being knocked to the ground while others were pushed on top of her. Then a police member slammed a knee into her back and pushed her face into the gravel while applying the handcuffs to her.

"E. After being struck by an officer he backed away, and it was then he heard one of the officers say that the orders were to move the people even if they had to knock them down. That is when he was thrown back into the scuffle and rapped a few more times with a riot stick. Then he

[300]

On or about April 14, 1977, the defendant Council republished and distributed the above mentioned letter from defendant Edgar to Governor Straub in the Oregon Teamster newspaper.

Plaintiffs alleged in their amended complaint that certain of the statements made in the above letter and article were false and defamatory. They also allege that the statements were made with malice and with knowledge of their falsity or with reckless disregard for their truth; that the statements were made of and concerning plaintiffs; that defendant Edgar was acting within the scope of his employment with defendant Council when he wrote the letter and when the newspaper published the article and republished the letter; and that plaintiffs were damaged by the statements.

As we stated in *Cushman v. L. B. Day,* 43 Or App 123, 126, 602 P2d 327 (1979), *rev den* 288 Or 571 (1980),

"Whether a statement is *capable* of bearing a defamatory meaning is a question of law for the court. However, if capable of such meaning, whether

was ordered to get his arms behind him to be handcuffed or they would break his arm.

"F. Elizabeth McFarland related how one policeman insisted on grabbing her by a breast, not once but three times before she found herself on the ground.

"G. When the pushing started and several of the women were on the ground a passing car stopped, as well as a loaded school bus. The driver got out to inquire why the women were being beaten down, and was told by the police to get out or be arrested.

"H. None of the eight who found themselves in jail that morning had any conversation with the police prior to the scuffle, or the arrests. Nor were they advised of their rights after being arrested.

"I. Most agreed that Police Chief Herr Brooks had done a good job training his elite storm troopers for the event.

"J. Immediately following the incident, Teamster Cannery Local 670 filed charges against the police department on behalf of those mistreated. 'Our members have a perfect right to picket peacefully, which they were doing,' Local 670 Secretary-Treasurer L. B. Day stated. 'None of our people will be treated this way, and the Eugene Police will get a lesson in spades as a result of it.'"

or not the statement is actually defamatory is generally a question for the finder of fact. *Beecher v. Montgomery Ward & Co.,* 267 Or 496, 517 P2d 667 (1973); *Hinkle v. Alexander,* 244 Or 267, 411 P2d 829, 417 P2d 586 (1966)." (Emphasis in original.)

### First Cause of Action

We conclude that defendant Edgar's letter to Governor Straub requesting an investigation into the incident by the state Attorney General, was absolutely privileged as a report to a proper officer of government concerning alleged law violations; Or Const, Art 5, § 10; ORS 180.070, et seq.; *Ramstead v. Morgan,* 219 Or 383, 347 P2d 594, 77 ALR2d 481 (1959); Restatement (Second) of Torts § 587, Comment b at 249 (1977). In this connection we point out that the Attorney General, when directed by the Governor to conduct an investigation under ORS 180.070, may

"* * * direct the county grand jury to convene for the investigation and consideration of such matters of a criminal nature as he desires to submit to it. He may take full charge of the presentation of such matters to the grand jury, issue subpenas, prepare indictments and do all other things incident thereto to the same extent as the district attorney may do."

A grand jury investigation conducted by the Attorney General pursuant to ORS 180.070, et seq., is a judicial function and hence the absolute privilege applies. Therefore, the trial judge did not err in sustaining defendants' demurrer on plaintiffs' first cause of action.

### Second Cause of Action

The article published in the defendant union's newspaper, while differing substantially in content with the Eugene Register Guard newspaper article involved in *Cushman v. Day, supra,* involves the same rule of law. We hold, therefore, that plaintiffs have met their burden under ORS 16.530(1)[4] which requires

---

[4] ORS 16.530(1) provides:

"In an action for libel or slander it shall not be necessary to state in the complaint any extrinsic facts for the purpose of showing the

[302]

only that plaintiffs allege that the defamatory statements were made concerning them. As in *Day,* the statements published in the Oregon Teamster made serious charges of misconduct by the police who were at the site of the picketing, and plaintiffs allege that they were the officers involved.

It follows that the court erred in sustaining defendant's demurrer as to this cause of action.

### Third Cause of Action

Republication of defendant Edgar's letter to Governor Straub does not come within the absolute privilege discussed above. While concluding with an expression of opinion, nevertheless, this letter did set forth certain matters of fact which, if untrue, could be actionable. *See New York Times v. Sullivan,* 376 US 254, 84 S Ct 710, 11 L Ed 2d 686, 95 ALR2d 1412 (1964). We hold, therefore, that the court erred in sustaining defendants' demurrer on the third cause of action.

Affirmed in part; reversed in part and remanded.

---

application to the plaintiff of the defamatory matter out of which the cause of action arose; but it shall be sufficient to state generally that the same was published or spoken concerning the plaintiff. If such allegation is controverted, the plaintiff shall be bound to establish on the trial that it was so published or spoken."