Argued and submitted October 4, 1983; resubmitted In Banc June 5, affirmed July 18, reconsideration denied October 5, petition for review denied December 4, 1984 (298 Or 334)

# WORLEY,
*Respondent,*

*v.*

# OREGON PHYSICIANS SERVICE et al,
*Appellants.*

## (A8009-05318; CA A26758)

686 P2d 404

Ronald E. Rhodes, Portland, argued the cause for appellants. With him on the briefs was Richard C. Baldwin, Portland.

J. Robert Jordan, Portland, argued the cause for respondent. On the brief were Michael R. Jordan, and Jordan & Jordan, Portland.

NEWMAN, J.

Joseph, C. J., dissenting.

**NEWMAN, J.**

Defendants appeal from a judgment that awarded plaintiff damages for slander. Her action was based on statements that defendant Sanders, a vice-president of defendant Oregon Physicians Service (OPS), made to other OPS employes after OPS had discharged plaintiff. Defendants contend that the court erred in failing to grant their motions for a directed verdict and for judgment notwithstanding the verdict and in failing properly to instruct the jury on privilege. We affirm.

Plaintiff was a claims analyst at OPS for approximately five years before her discharge in October, 1979. OPS considered her to be an honest and trusted employe. As part of her employment she was required periodically to work overtime on Saturdays. Often, she would report to work on Saturdays between 5 and 6 a.m. in order to finish her work by early afternoon. For purposes of office security, OPS's policy was to issue keys to supervisors only, but it authorized supervisors to lend their keys to other employes. OPS forbade employes to make copies of keys. Often a supervisor would lend a key to plaintiff to open the office on Saturday mornings.

On Saturday, September 29, 1979, Sanders discovered that plaintiff possessed an unauthorized key. Plaintiff admitted that she had made a copy of a key but refused to state from whom she had obtained the original key. The following Monday, Sanders discharged her. He told her that the reason for the discharge was her possession of the unauthorized key. Later that same day he called a meeting of all claims department personnel. At that meeting he stated that (1) an unidentified employe was discharged that day because she had an unauthorized key, (2) several items of personal property had been missing before that date and (3) if any other employes had unauthorized keys, they should be turned in to the employer. Plaintiff was the only claims department employe who had been discharged that day.

Plaintiff does not dispute OPS's right to discharge her. She asserts, however, that the effect of Sanders' combined statements at the claims department personnel meeting was falsely to accuse her of theft. Defendants' amended answer

raised the affirmative defense of a qualified privilege. The jury returned a general verdict in plaintiff's favor.

As their first assignment of error defendants contend that the trial court erred in failing to grant their motions for a directed verdict and judgment notwithstanding the verdict. They argue that (1) Sanders' statements were not defamatory; (2) his statements, as a matter of law, were qualifiedly privileged; and (3) defendants, as a matter of law, did not abuse their qualified privilege.

A defamatory statement is one that subjects a person to hatred, contempt or ridicule or tends to diminish the esteem, respect, goodwill or confidence in which she is held or excites adverse, derogatory or unpleasant feelings or opinions against her. *Farnsworth v. Hyde,* 266 Or 236, 238, 512 P2d 1003 (1973); *Bock v. Zittenfield,* 66 Or App 97, 100, 672 P2d 1237 (1983), *rev den* 296 Or 486 (1984). The court determines whether a statement is capable of a defamatory meaning. *Beecher v. Montgomery Ward & Co.,* 267 Or 496, 500, 517 P2d 667 (1973); *Cushman v. Day,* 43 Or App 123, 126, 602 P2d 327 (1979), *rev den* 288 Or 571 (1980); *see also Bock v. Zittenfield, supra,* 66 Or App at 99. A statement that a person has committed theft is defamatory as a matter of law, *Cook v. Safeway Stores, Inc.,* 266 Or 77, 82, 511 P2d 375 (1973), whether or not it refers to her work performance. Defendants argue that Sanders' statements were not capable of a defamatory meaning, because there was no evidence from which the jury could infer that his statements were a reference to plaintiff. Plaintiff asserts that it was not necessary for Sanders to refer to her by name but that, because she was the only claims department employe discharged, her co-employes would interpret Sanders' statements—that an employe was discharged because she had an unauthorized key and that several items of personal property had been missing before that date—as an accusation of theft directed at her.

In *Wheeler v. Green,* 286 Or 99, 593 P2d 777 (1979), the defendants published a letter which defamed an unnamed person. The plaintiff sued, alleging that the letter referred to him. No one who read the letter testified. However, the Supreme Court ruled that, although the letter did not refer to the plaintiff by name, the jury could infer that the letter referred to him because "[d]irect testimony of the recipients'

understanding of the defamatory nature of a [slander] is not required if other evidence is sufficient to permit an inference of such an understanding." *Wheeler v. Green, supra,* 286 Or at 105. Here, at least one co-employe testified that initially she believed that the discharge and the thefts were connected. The court correctly determined that the jury could reasonably infer from all the evidence that Sanders' statements referred to plaintiff and accused *her* of committing theft.[1]

■ ■   Defendants also argue that, as a matter of law, Sanders' statements were conditionally privileged and that defendants did not abuse that privilege. A conditional privilege to make a defamatory statement can arise when it is made to protect the interests of an employer or when it is on a subject of mutual concern to the publisher and those to whom it is made. As a matter of law, Sanders' statements were conditionally privileged, because a reasonable person could only find from the evidence that they were made to protect the interests of OPS in security and employe morale and were on a subject of mutual concern to it and to the claims department employes to whom it was made. *Wattenburg v. United Medical Lab.,* 269 Or 377, 380, 525 P2d 113 (1974); *Benassi v. Georgia-Pacific,* 62 Or App 698, 702, 662 P2d 760, *modified* 63 Or App 672, 667 P2d 532, *rev den* 295 Or 730 (1983); *see* Restatement (Second) Torts §§ 593-598A (1977).

Plaintiff introduced evidence, however, from which the jury could find that, even if defendants' statements were conditionally privileged, defendants abused that privilege. In *Schafroth v. Baker,* 276 Or 39, 45, 553 P2d 1046 (1976), the Supreme Court adopted the portion of the Restatement of Torts § 599, *comment a* (1938), on how the privilege can be abused. *Comment a* provides:

> "The unreasonable exercise of the privilege is an abuse of the occasion which defeats the protection otherwise afforded. *The occasion may be abused because of the publisher's lack of belief or reasonable grounds for belief in the truth of the defamatory matter* (see §§ 600-602); because the defamatory

---

[1] Defendants contend that there was no evidence that Sanders mentioned the missing property at the meeting. There was such evidence. First, Sanders did not deny that he made the statements. Second, two witnesses, Rutherford and Yarozeski, who were present at that meeting, said on cross-examination that the issue of missing property was discussed.

matter is published for some purpose other than that for which the particular privilege is given (see § 603); because the publication is made to some person not reasonably believed to be necessary for the accomplishment of the purpose of the particular privilege (see § 604); or because the publication includes defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the occasion is privileged (see § 605)." (Emphasis supplied.)

*See also Benassi v. Georgia Pacific, supra,* 62 Or App at 703, 709. Here, Sanders testified that he did not believe that plaintiff was a thief and that he did not intend to accuse her of theft. The jury could have believed that part of Sanders' testimony that he did not believe that plaintiff was a thief, but it could also have found from the evidence that his statements to the claims department employes served to accuse her of theft. The jury could, therefore, have concluded that, "because of [Sanders'] lack of belief * * * in the truth of the defamatory matter," he knowingly made false statements to the effect that plaintiff was a thief and unreasonably exercised and, consequently, abused the privilege. The trial court correctly denied defendants' motions for a directed verdict and for judgment notwithstanding the verdict.

■  As we interpret defendants' second assignment of error, they contend that the court erred in failing both to give defendants' requested jury instruction 18 and to instruct the jury that Sanders' statements were conditionally privileged as a matter of law. Defendants' requested jury instruction 18 provides:

"If Mr. Sanders made the statement about plaintiff Worley, he had a privilege to do so. This privilege means that defendant, Oregon Physicians Service, cannot be held liable for defamation unless all the following elements are present. You must first determine whether any statements were made concerning Worley. Secondly, you must find that Mr. Sanders was motivated by malicious purpose in making the statement. Then you must find that Mr. Sanders' primary purpose in making the statement was something other than wanting to stop rumors and promote employee morale.

"If you find that the statements were made and that Mr. Sanders was not motivated by malicious purpose or that his primary purpose in making the statement was to stop rumors and promote employee morale, then you must return your verdict for defendant."

The requested instruction is an incorrect statement of the law, because it instructs the jury that, in order to find that defendants abused their conditional privilege, it must find that they had a malicious motive in addition to an improper purpose. Plaintiff did not need to prove that Sanders' statements were made with a malicious motive.[2] The court did not err in refusing to give defendants' requested jury instruction 18.

■■ The trial court, however, should have instructed the jury that defendants' statements were privileged and should have submitted to the jury only the issue of abuse.[3] If the facts

---

[2] In *Schafroth v. Baker, supra,* 276 Or at 46, the court stated that the "approach taken by the Restatement of Torts [described in section 599, *comment a,*] provides a much more helpful framework for jury instructions."

[3] Plaintiff relies on *Schafroth v. Baker, supra,* for the proposition that the existence of a conditional privilege is a jury question. That case, however, does not overrule *Peck v. Coos Bay Times Pub. Co., infra,* or *Ivie v. Minton, infra.* Although *Schafroth* suggests that existence of the privilege may be a jury question, it does not state that necessarily it is such a question. At the same time it approved the approach of the Restatement, stating:

> "* * * The approach taken by the Restatement of Torts provides a much more helpful framework for jury instructions. Using this framework, the jury could be told that certain occasions are privileged, with appropriate specific instructions to assist in determining whether such an occasion was involved in the case. It could then be given appropriate instructions on what constitutes abuse of the privilege and the consequent loss of its protection. The term 'malice' as usually defined does not adequately call the jury's attention to the need for some relationship between the defendant's purpose and the purpose of the privilege, the defendant's belief as to the probable truth of the statement, and the appropriateness of the scope of the publication, and other matters which are important in determining whether the defendant abused a privileged occasion." 276 Or at 46. (Emphasis supplied.)

The Restatement is clear that the existence of the privilege is a question for the court:

> "(1) The court determines whether the occasion upon which the defendant published the defamatory matter gives rise to a privilege.

> "* * * * *

> "Comment on Subsection (1):

> "*a.* Whether a privilege exists at all is a question for the court. This requires the court to determine whether the circumstances under which the publication was made were such as, under the rules stated in §§ 585-598A, and in §§ 611 and 612, to make the publication privileged. This is true whether the issue involves the existence of an absolute privilege or of a conditional privilege. If the facts are in dispute, the jury is called upon to consider the evidence and pass upon the issues thus raised. It is for the court, however, to decide whether the facts found by the jury made the publication privileged or to instruct the jury as to what facts they must find in order to hold the publication privileged." Restatement (Second) Torts § 619 (1965).

surrounding publication of a communication are not in dispute, the question whether a communication is conditionally privileged is for the court. *Peck v. Coos Bay Times Pub. Co.,* 122 Or 408, 259 P 307 (1927); *Ivie v. Minton,* 75 Or 483, 147 P 395 (1915). It is undisputed that Sanders' statements were made only to employes of the claims department to protect the interests of OPS security and employe morale and were on a subject of mutual concern to it and to the employes to whom it was made.

The court did give the following instruction:

"In that connection I instruct you that the law does recognize what is known as a conditional privilege by one uttering a defamatory statement, if you find one or more of the following conditions were present and existed:

"(1) That the statement was made to protect the interests of the Defendant; or

"(2) That the statement was made to protect the interests of the Plaintiff's employer; or

"(3) That the statement was on a subject of mutual concern to the Defendant and the persons to whom the statement was made.

"Now, it is a question of fact for you to determine again from all the facts and circumstances described to you by the evidence, to determine whether or not any one or more of the conditions existed that would give rise to the conditional privilege. * * *"

The instruction did not recite that defendants' statements were privileged but only that the privilege existed if the jury found that certain circumstances were present. Under the instruction, the jury may have concluded erroneously that the privilege did not exist, even though the facts surrounding the publication were not in dispute.

Although we interpret defendants' second assignment of error broadly, defendants did not except below to the instruction that the court gave.[4] The only exception to the

---

[4]

"[Defendants' counsel]: The only exception for the Defendant, Your Honor, is the failure to give number 18 specifically in the language that any statements made by Mr. Sanders were qualified, privileged, or protected as a matter of law. It is my opinion that the Court should have made that determination as a matter of law and not submitted it to the jury."

court's instructions that defendants made was to the court's failure to give defendants' requested jury instruction 18. ORCP 59H requires that a party except after the court instructs the jury in order to preserve for appellate review error in an instruction given.[5] Although the instruction that the court gave was erroneous, defendants did not preserve that error.

ORCP 59H also states that an exception is deemed taken if the court refuses to give an instruction that a party submits. The party, however, must submit to the court the specific instruction it wants. ORCP 59A.[6] Defendants do not argue here, except for their requested jury instruction 18, that the court should have given any instruction that defendants submitted but that the court did not give.[7]

Affirmed.

---

[5] ORCP 59H provides:

"* * * [N]o instruction given to a jury shall be subject to review upon appeal unless its error, if any, was pointed out to the judge who gave it and unless a notation of an exception is made immediately after the court instructs the jury. * * * It shall be unnecessary to note an exception in court to any other ruling made. All adverse rulings, including failure to give a requested instruction or a requested statement of issues, except those contained in instructions and statements of issues given, shall import an exception in favor of the party against whom the ruling was made."

[6] ORCP 59A provides:

"Unless otherwise requested by the trial judge on timely notice to counsel, proposed instructions shall be submitted at the commencement of the trial. Proposed instructions upon questions of law developed by the evidence, which could not be reasonably anticipated, may be submitted at any time before the court has instructed the jury. The number of copies of proposed instructions and their form shall be governed by local court rule."

[7] Defendants also submitted on privilege their requested jury instruction 18a which provides:

"I instruct you that an employer has a qualified privilege to communicate to its employees the reasons for another employee's discharge. This privilege will arise:

"(1) If the statement was made to protect the interests of the Defendant; or

"(2) If the statement was made to protect the interests of the Plaintiff's employer; or

"(3) If the statement was on a subject of mutual concern to the Defendant and the persons to whom the statement was made."

The instruction the court gave was substantially identical to defendants' requested jury instruction 18a, and defendants do not assert here that the court should have given their requested instruction.

**JOSEPH, C. J.,** dissenting.

The majority opinion demonstrates that the line of cases culminating in *Bock v. Zittenfield,* 66 Or App 97, 672 P2d 1237 (1983), *rev den* 296 Or 486 (1984), can too easily be extended to reach too far. Even though I believe that *Bock* was wrongly decided, and that Judge Van Hoomissen's dissent was correct *in principle,* I do not now propose to reconsider it— primarily because Bryant's statements there were definitely about Bock and about his work performance. That is the point of departure for distinguishing the instant case. In each of the cases primarily relied on in *Bock* (*9 Farnsworth v. Hyde,* 266 Or 336, 512 P2d 1003 (1973); *Newton v. Family Federal Savings & Loan,* 48 Or App 373, 616 P2d 1213 (1980); *Benassi v. Georgia-Pacific,* 62 Or App 698, 662 P2d 760 (1983); *Walsh v. Consolidated Freightways,* 278 Or 347, 563 P2d 1205 (1977)), the allegedly defamatory statements were unambiguously about the plaintiffs. In all but *Farnsworth* (and even there, arguably) the statements reflected on the plaintiffs' work performance.

That is not true in this case. As stated in the majority opinion, Sanders called a meeting of all claims department personnel the day when plaintiff had been discharged. "At that meeting he stated that (1) an *unidentified employe* was discharged that day *because she had an unauthorized key,* (2) several items of personal property had been missing *before that date* and (3) if any other employes had unauthorized keys, they should be turned in to the employer." (Slip opinion at 2; emphasis supplied.) In other words, an employe had been discharged for violation of an express company policy, a meeting was called to remind employes of the company policy, the reason for the discharge was stated to be the violation of that policy and the reason for the policy was stated. Surely, no one could reasonably conclude that it was unreasonable or inappropriate for the meeting to be called, for the policy to be restated and for the basis of the policy to be stated. Of course, it would have been *possible* to do that without mentioning the discharge of any employe; but it is critical to note that the exact and proper reason for the employe's discharge was stated and that plaintiff does not challenge the propriety of that discharge.

The only defamatory inference that could be drawn is that Sanders was *not* stating the true reason for the discharge but was "hinting" that the real reason was theft by plaintiff. Although, as the opinion says, "A statement that a person has committed theft is defamatory as a matter of law" (69 Or App at 244), there must be evidence from which the jury could *reasonably* infer that the statement *was* that the person had committed theft. We should hold, as a matter of law, that a clear and accurate statement of the reason for plaintiff's discharge prohibits submission to a finder of fact of the issue whether the statement of the reason for the unauthorized key policy in the given context was capable of a defamatory meaning.

That should be the end of the case. There is no need to pass on the question of qualified privilege; but if there were, there is also a need to be a lot more careful than the present majority opinion. There are four examples given in the Restatement comment relating to abuse of qualified privilege. 69 Or App at 245-46. I submit that none of those reasonably supports the majority's application under the facts here. It is important to note the underlying theme of the exmples: Loss of a qualified privilege by abuse depends upon the *unreasonableness* of the conduct. The majority opinion will effectively weaken the concept of qualified privilege to the point of disappearance, for every employer in a similar situation would be at an extreme risk in trying to implement and reinforce work rules after a discharge.

I dissent.

Young, J., and Rossman, J., join in this dissent.