Argued and submitted November 6, reversed and remanded December 6, 1989

BONNER,
*Appellant,*

*v.*

GRIGGS et al,
*Respondents.*

(88-1592-L-2; CA A60651)

783 P2d 36

William A. Mansfield, Medford, argued the cause for appellant. With him on the briefs was Thomas S. Parks, Medford.

Daniel C. Thorndike, Medford, argued the cause for respondents. With him on the brief was Blackhurst, Hornecker, Hassen & Thorndike & Ervin B. Hogan, Medford.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

**WARREN, J.**

Plaintiff sued defendants for defamation. Defendants Griggs (defendants) moved to dismiss under ORCP 21A(8) on the ground that the statements at issue are not defamatory. The trial court granted the motion and entered judgment in their favor pursuant to ORCP 67B. Plaintiff appeals, and we reverse.

Plaintiff operated an insurance brokerage agency in Jacksonville when the alleged defamation occurred. Defendants operated a trucking business. Plaintiff alleges that defendants caused to be published in the Medford *Mail Tribune* an article titled, "Underwriter Sues Ex-Agency." The article said that National Truck Underwriting Managers, Inc., was suing plaintiff for retaining nearly $33,000 in insurance premiums, leaving many truck owners without insurance. It stated, in part:

> "The underwriter's allegation isn't the only complaint about the business. Some of the truckers named by National Truck, a Minnesota company, say Bonner kept their money and in other ways mishandled their policies, sometimes causing them to lose their insurance altogether.

> " 'If there had been an accident — particularly if it was the truck's fault — that amount of liability would have been disasterous,' says former Bonner customer Mike Maroney, a partner in R&M Transport, a Grants Pass trucking company that owns and leases about 30 trucks.

> "He says that for a few weeks last fall some of the R&M truck owners were operating without insurance because Bonner kept their premium payments, which averaged $300 to $600.

> "* * * * *

> "Maroney says R&M Transport signed up for group truck insurance more than two years ago. He says that the company's last set of policies, 'went along fine for eight or nine months.'

> " 'Right at the end they started getting canceled off for non-payment. So we had to scramble for new policies.'

> "The cancellations were a surprise because the payments had been made, Maroney says. Eventually, R&M proved that the premiums had been paid to Bonner and National Truck made a partial refund to R&M. He calculated that several of

the truck owners under lease agreements with R&M lost $1,000 to $2,000 in premiums paid to Bonner that were not refunded by National Truck.

"Maroney says the amounts are too small for the company to try to recoup, but *Eagle Point independent trucker Jim Griggs says he filed a complaint with the state Insurance Commissioner to try to get $2,300 he says Bonner owes him.*

"*Griggs says his trouble started when state authorities ordered him off the highway because he lacked insurance for damages to public property. Without the coverage, says Griggs, 'You park it — that's it.' He figures he lost about $60 a [sic] hour for the day he spent, with his loaded truck sidelined, trying to straighten out his insurance coverage.*

"'*What he did was create a total world of confusion,' Griggs says of Bonner. 'It took me about a year to figure out how he did it, and I really don't know how it happened.'*" (Emphasis supplied.)

■ The question of whether a statement is capable of a defamatory meaning is a matter of law for the court. *Worley v. OPS,* 69 Or App 241, 686 P2d 404, *rev den* 298 Or 334 (1984). Generally, the inquiry is whether the statement would subject the plaintiff "to hatred, contempt, or ridicule, or tend to diminish the esteem, respect, goodwill, or confidence in which one is held, or to excite adverse, derogatory or unpleasant feelings or opinions against one." *Bock v. Zittenfield,* 66 Or App 97, 100, 672 P2d 1237 (1983), *rev den* 296 Or 486 (1984). A statement is capable of a defamatory meaning if it ascribes to the plaintiff "characteristics or conduct that would adversely affect his fitness for his occupation or profession." 66 Or App at 100.

■ Defendants contend that the statements in the article attributed to James Griggs were not defamatory, because he said only that plaintiff owed him money and that plaintiff had created confusion. However, in deciding whether the complaint states a claim, we do not read the allegation in isolation, but in the context of the entire pleading, including the allegation that defendants "caused" the newspaper article to be published. Read in that context, the statements clearly convey that plaintiff had retained money given to him by Mr. Griggs and others to pay premiums and had left them without insurance. That ascribes to plaintiff conduct that would adversely

affect his fitness to be an insurance agent. The statements were capable of a defamatory meaning.

◼ Defendant Sharon Griggs contends also that the complaint fails to state a claim against her, because it does not state that she made any of the allegedly defamatory statements. The complaint alleges that defendants were doing business as Griggs Trucking and that "[d]efendants caused to be published" the newspaper article. That is sufficent to admit proof that defendants were business partners and that both caused the defamatory matter to be published in the newspaper. At this stage of the case, we must accept plaintiff's allegations as true. *Greenfield v. Ollikala,* 85 Or App 357, 736 P2d 599 (1987). The complaint stated a claim against both defendants.

Reversed and remanded.