JOHN L. HUTCHINSON *vs.* NEW ENGLAND TELEPHONE
AND TELEGRAPH COMPANY & another.

Suffolk.    January 6, 1966. — February 4, 1966.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Libel and Slander.*

In an action for slander against a telephone company and its switchboard
operator based on statements, made by the operator to police in response
to questioning by them, erroneously identifying the plaintiff's voice as
being the voice which, a short time before, had given the operator a
false bomb warning over the telephone, it was held that such statements,
assuming that they accused the plaintiff of the crime of violating G. L.
c. 269, § 14, were conditionally privileged.   [191]

An action of slander based on conditionally privileged statements could
not be maintained in the absence of proof by the plaintiff of actual
malice or other abuse of the privilege.   [191]

In an action for slander against a telephone company and its switchboard
operator based on statements made by the operator to police erroneously
identifying the plaintiff's voice as being the voice which, a short time
before, had given the operator a false bomb warning over the telephone,
it was held that the conditional privilege attaching to such statements
was not abused and lost, on the ground of reckless conduct of the opera-
tor, even if it appeared that the only identifying features used by her
to compare the voices were that "both [were] young, male, clear, dis-
tinct," that she must have handled a substantial number of calls between
the false warning and her erroneous identification, that on orders from
her superiors she declined "to go to the police station to make an identi-
fication," and that for some hours she did not communicate to the police
information received by her that someone other than the plaintiff might
have telephoned in the false warning.   [191–192]

TORT.   Writ in the Superior Court dated September 9,
1959.

The action was tried before *Coddaire, J.*

*Francis E. Dooley, Jr.,* for the plaintiff.

*Leon F. Sargent* for the defendants.

WILKINS, C.J.   This action of tort for slander is in two
counts, count 1 against New England Telephone and Tele-
graph Company and count 2 against Eleanor J. Doyle, a
telephone operator of the company.   The case arose out of

an erroneous identification by Mrs. Doyle, under police questioning, of the plaintiff's voice as being the one which telephoned in a false bomb warning. The jury returned verdicts of $34,000, but the judge, under leave reserved, ordered the entry of verdicts for the defendants. To this the plaintiff excepted.

Conceding the difficulty in this case of selecting the evidence most favorable to the plaintiff, we endeavor to state facts which the jury could have found. On Sunday evening, June 14, 1959, Mrs. Doyle was on duty as a switchboard operator at the company's headquarters in Roxbury. This was three days after the bombing of the North Station Metropolitan Transit Authority station which caused serious personal injuries and property damage, was widely reported in Boston newspapers, and led to many false bomb calls. About 6:03 P.M. she received a call over a two-party line in which a male voice said, "I want to report that the Dudley Street Station is going to be blown up tonight." The caller then hung up. The two subscribers on the line were H. E. Anderson, 6 Rosemary Street, Jamaica Plain, and Catherine M. Hutchinson, the plaintiff's mother, 26 Rosemary Street, Jamaica Plain. Mrs. Doyle immediately rang back both parties without receiving an answer. It was impossible for her to tell from which side of the line the call had come. She sought instructions from her supervisor who told her to request a trace of the call. This was the duty of the floor switchman, and the supervisor informed the Boston police that the trace was being made. Mrs. Doyle continued to receive calls. On Sunday evenings she averaged fifty calls an hour. She left the cord in the line, which procedure held it up so that it could not be used. Thereafter if anyone wanted to call out from that line, he would have to call through the operator, and anyone attempting to call in would get a busy signal. On the line while thus locked, she received calls inquiring if the line was out of order. One such call later turned out to have been by the plaintiff's brother, Arthur. Another happened to have been by Mrs. Anderson, who lived with her two daughters.

Boston police officers Barry and Mulkern arrived at the telephone office about 6:25 or 6:30 P.M. They asked Mrs. Doyle whether if she heard the voice again she could recognize it. She said that she had heard a voice again which she thought was the same as the one which made the bomb call. This voice had inquired as to what was the matter with the line. At about 6:30 to 6:40 P.M. when she believed the police were present a man, whose voice Mrs. Doyle thought sounded similar to the voice of the one who had made the bomb call, called out from the two-party line and requested a number.

About fifteen minutes after the police left she received a call on the line from Officer Barry, who was at the Hutchinson house. He asked her to listen to a voice. After she did, he asked if she could identify it. She said that she was as positive as she could be that it was the original voice. After 8 P.M. she left her position, with the supervisor's permission, to talk with officers Barry and Mulkern, who told her that the plaintiff had been taken into custody. They asked her to go to the police station to give a statement and to make an identification. She declined to go after there were "some words with her supervisor."

When Mrs. Anderson called she told Mrs. Doyle that there was a boy in her house who might have made the call. Mrs. Doyle replied, "No," they had the party they were looking for.

Mrs. Doyle had never met or seen the plaintiff before June 14, 1959. She had never heard of him or his family and knew nothing about him. She had no hatred, ill will, or hostility toward him, and the identification was made solely at the request of the police.

The plaintiff was twenty-one years of age in June, 1959, and lived with his parents. At the time he was engaged to a girl whom he married in 1961.

The plaintiff was arrested and charged with violation of G. L. c. 269, § 14, as amended through St. 1958, c. 322, which made it a felony to make a false report relative to the location of explosives. He was exonerated on June 18, 1959,

after a hearing in the Municipal Court for the Roxbury District.

The false telephone call, which occasioned the trouble, was actually made by the boy referred to by Mrs. Anderson. He was the sixteen year old nephew of the tenant who lived upstairs in her house.

The pertinent principles are well established, but difficulty lies in their application to somewhat novel facts. We assume that Mrs. Doyle's statements to the police amounted to the charge of a crime against the plaintiff, and constituted slander for which she and the company might be liable. These statements were 'conditionally privileged. *Pihl* v. *Morris,* 319 Mass. 577, 581. *Galvin* v. *New York, N. H. & H. R.R.* 341 Mass. 293, 296. Public policy demands that police investigations should not be thwarted by inability to obtain answers from persons who know the facts but fear civil actions. It is the duty and right of every citizen, when called upon by the proper officer, to communicate information as to the commission of a crime. *Worthington* v. *Scribner,* 109 Mass. 487, 488. *In re Quarles & Butler,* 158 U. S. 532, 535. Restatement: Torts, § 598. Prosser, Torts (3d ed.) § 110, p. 811. 140 A. L. R. 1466, 1468. As the absence of express malice is conceded, there remains the question whether the privilege was lost because the charge was made recklessly. *Gott* v. *Pulsifer,* 122 Mass. 235, 239. *Retailers Commercial Agency, Inc., petitioner,* 342 Mass. 515, 521.

The plaintiff contends that if a qualified privilege initially attached, it was destroyed by the wanton or reckless conduct of Mrs. Doyle. The plaintiff relies upon certain of her testimony on direct examination that the only identifying features she used to compare the voices were that "[t]hey were both young, male, clear, distinct." The plaintiff further urges that Mrs. Doyle must have handled approximately forty-five calls between the bomb call and her identification of the plaintiff's voice; that she failed to inform the police that Mrs. Anderson had told her that a young man was a visitor in the house in another apartment

and might have made the call; and that she refused "to go to the police station to make an identification." We do not agree. In determining whether any given conduct was reckless much depends upon the circumstances. See *Commonwealth* v. *Pierce,* 138 Mass. 165, 175–181; *Commonwealth* v. *Welansky,* 316 Mass. 383, 398; Restatement 2d: Torts, § 500. See also *Billings* v. *Fairbanks,* 139 Mass. 66, 68–69; *Doane* v. *Grew,* 220 Mass. 171, 177–178.

The defendant Doyle, while busy about her duties, suddenly found herself in a most unusual situation. She was a subordinate employee working under supervision and was not experienced in the detection of crime. She should not be held to an unreasonable standard. Recklessness is not to be predicated upon her testimony on direct examination quoted above. See Prosser, Torts (3d ed.) § 110, pp. 822–823. It is inaccurate and unfair to treat her declining to go to the police station upon her superior's orders as a refusal made by her on her own responsibility. Neither is it correct to say that she did not inform the police of the young man visitor in the house. At ten forty on the same evening she did inform the police of the substance of her conversation with Mrs. Anderson. The plaintiff had a regrettable and unfortunate experience. Understandably he wishes to turn this to his pecuniary advantage, but there is no reason to impose an enhanced burden upon the defendant Doyle.

There was no error in entering the verdicts under leave reserved.

*Exceptions overruled.*