**Bessie CONN, James Conn and Jeniece Conn, Plaintiffs-Appellants,**

v.

**PAUL HARRIS STORES, INC., Edward J. Debartolo Corporation, Homart Development Company, Castleton Square Mall Merchants Association, the Consolidated City of Indianapolis, and the State of Indiana, Defendants-Appellees,**

v.

**Donald E. KRYTER and Edward J. Debartolo Corporation, Third-Party Defendants-Appellees.**

**No. 1–1081A303.**

Court of Appeals of Indiana,
First District.

Aug. 31, 1982.

Rehearing Denied Oct. 6, 1982.

John T. Manning, Wisconsin Rapids, Wis., for plaintiffs-appellants.

James R. Fisher, Joseph A. Schenk, Ice, Miller, Donadio & Ryan, Indianapolis, for Paul Harris Stores, Inc.

NEAL, Judge.

## STATEMENT OF THE CASE

Bessie Conn[1] appeals an adverse summary judgment entered by the Hancock Superior Court in her action against Paul Harris Stores, Inc. for false imprisonment, slander, and malicious prosecution.[2]

We affirm.

## STATEMENT OF THE FACTS

Considering the material evidence and all reasonable inferences therefrom most favorable to Mrs. Conn, the non-moving party, the incident underlying this cause occurred as follows: Mrs. Conn and her infant daughter were shopping at the Castleton Square Mall in Indianapolis on the afternoon of October 18, 1974. Very shortly after she entered the Paul Harris store, a lessee of the Mall, an alarm sounded at the front of the store. The alarm is designed to sound when tagged merchandise is removed from the store without having been deactivated by a store employee. When the alarm sounded, a man was observed leaving the store carrying merchandise, and two employees gave chase; the shoplifter eluded his pursuers and was never apprehended. An employee told the store manager, Mrs. Edie, who was apparently at the rear of the store when the commotion developed, that the shoplifter had entered the store at the same time Mrs. Conn had, and pointed out the latter to her.

Meanwhile, Donald E. Kryter, an officer of the Indianapolis Police Department who was working part-time as a security guard for the Mall, was told by an unidentified person that there was trouble at the Paul Harris store. Officer Kryter arrived at the store several minutes later and spoke to Mrs. Edie. She told him that an employee had related to her that Mrs. Conn and the shoplifter had entered the store together. Officer Kryter, who was in uniform, approached Mrs. Conn, asked her if she knew the shoplifter, and requested her identification. Mrs. Conn denied knowing the shoplifter, but refused to identify herself. Officer Kryter explained he was investigating a felony and persisted in asking her name. Mrs. Conn walked away and exited the store. Out on the Mall, Mrs. Conn became loud, uttered an obscenity, and accused Officer Kryter of picking on her because she is black. Mrs. Conn was then placed under arrest for disorderly conduct. She was later acquitted of that charge.

Mrs. Conn then instituted this action against Paul Harris and others. She ultimately achieved a settlement with the Edward J. DeBartolo Corporation (owner/operator of the Mall) and the Consolidated City of Indianapolis; Paul Harris is the only extant defendant.

## ISSUES

Mrs. Conn has preserved two issues for review which we restate as follows:

    I. Whether the trial court erred in granting summary judgment in fa-

---

1. Also named as plaintiffs-appellants in this cause are Mrs. Conn's husband, John, and their child, Jeniece.

2. Mrs. Conn apprises us in her reply brief that she waives appeal of the summary judgment entered against her claim for malicious prosecution; therefore, we do not consider that issue.

vor of Paul Harris on her count for false imprisonment, when Paul Harris had no probable cause to believe she had participated in a theft; and

II. Whether the trial court erred in granting summary judgment in favor of Paul Harris on her count of slander, when Paul Harris had no probable cause to believe she had participated in a theft.

### DISCUSSION AND DECISION

We restate the familiar principles that guide us in our review of summary judgments. A summary judgment may be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind.Rules of Procedure, Trial Rule 56(C). In determining whether a material issue of fact exists, the facts alleged by the party opposing the motion must be taken as true, and all doubts must be resolved against the proponent of the motion. *Crase v. Highland Village Value Plus Pharmacy*, (1978) 176 Ind.App. 47, 374 N.E.2d 58; *St. Joseph Bank & Trust Company of South Bend, Indiana v. The Wackenhut Corporation*, (1976) 170 Ind.App. 288, 352 N.E.2d 842; *Mayhew v. Deister*, (1969) 144 Ind. App. 111, 244 N.E.2d 448. Even if the facts are undisputed, all reasonable inferences must be resolved against the moving party. *St. Joseph Bank & Trust Company, supra.* Only if from this viewpoint there is no genuine issue as to any material fact may the summary judgment be sustained. *Kleen Leen, Inc. v. Mylcraine*, (1977) 174 Ind.App. 579, 369 N.E.2d 638. *Mayhew, supra.* The burden is on the proponent of the motion to demonstrate the absence of any issue of material fact and that the law has been properly applied. *The Levy Company, Inc. v. State Board of Tax Commissioners of the State of Indiana*, (1977) 173 Ind.App. 667, 365 N.E.2d 796; *Swanson v.*

*Shroat*, (1976) 169 Ind.App. 80, 345 N.E.2d 872. A fact is material if it tends to facilitate resolution of any of the issues for or against the party having the burden of proof on the issue. The factual issue is genuine if it cannot be completely resolved by reference to the undisputed facts. *Stuteville v. Downing*, (1979) Ind.App., 391 N.E.2d 629.

*Issue I.   False imprisonment*

■   Mrs. Conn contends summary judgment was erroneously entered against her claim for false imprisonment because a genuine issue of material fact is unresolved concerning whether Paul Harris had probable cause to detain her for shoplifting. Mrs. Conn relies upon the current shoplifter detention statute, Ind.Code 35–3–2.1–1 *et seq.* (Supp.1981), in support of her claim. Her reliance thereon is misplaced inasmuch as that statute became effective October 1, 1977[3], while the events complained of occurred on October 18, 1974. However, a statute was in effect on the date of Mrs. Conn's arrest that contained language similar to that relied upon, and we shall consider the argument as if she had cited the appropriate statute.

Acts 1967, ch. 151, §§ 1 through 6[4] provided generally that a merchant who lawfully detains a person he has probable cause to believe has committed a theft could not be subject to civil or criminal prosecution therefor. *See, Crase, supra*, 176 Ind.App. at 51–52, 374 N.E.2d 58. Mrs. Conn claims that the question of Paul Harris's probable cause to detain her is a factual issue inappropriate for resolution by summary judgment.

Paul Harris disagrees with Mrs. Conn's analysis of the issue, arguing that Mrs. Conn was never detained by Paul Harris; therefore, the question of its having had probable cause to detain her does not arise. Paul Harris does not assert the shoplifter detention statute as a defense. It claims that Officer Kryter was not an employee of Paul Harris, a fact Mrs. Conn admits, and

---

3.   *See*, Historical Note to West's A.I.C. § 35–3–2.1–1 (1978).

4.   Codified at Ind.Code 35–3–2–1 through –6 (Repealed).

that Mrs. Conn was under no detention until her arrest for disorderly conduct. The essence of Paul Harris's argument is that one who merely relates facts to a police officer is not liable for the officer's subsequent actions.

We first examine the nature of the tort action for false imprisonment. In *Crase, supra,* 176 Ind.App. at 50, 374 N.E.2d 58, it is stated:

"False imprisonment has been defined as an unlawful restraint upon one's freedom of locomotion or the deprivation of liberty of another without his consent."

The facts, which are essentially undisputed, do not give rise to the inference that Paul Harris or any of its agents so restrained Mrs. Conn or deprived her of her liberty. There is no showing that Paul Harris detained Mrs. Conn in any manner pending Officer Kryter's arrival, or indeed that anyone even spoke to her. Mrs. Conn admits that Officer Kryter was not an employee of Paul Harris. She does not argue that vicarious responsibility is imposed upon Paul Harris for Officer Kryter's conduct by virtue of its status as a lessee of Officer Kryter's employer, Castleton Square Mall. Therefore, there is no showing of any agency relationship that would subject Paul Harris to any liability.

Mrs. Conn asserts as a basis for Paul Harris's liability the statement made by Mrs. Edie to Officer Kryter suggesting that, according to information supplied by an employee, Mrs. Conn might have been a companion of the unidentified shoplifter. Mrs. Conn argues that by virtue of such communication, Mrs. Edie "bade the mall guard to restrain, question, and search the customer, Mrs. Conn, as one suspected of being a party to a shoplifting."[5] We agree that if such an inference could be reasonably drawn from the facts, summary judgment was inappropriate, for in some circumstances an actor may be liable for inducing an unlawful arrest.

In *Veneman v. Jones,* (1889) 118 Ind. 41, 44–45, 20 N.E. 644, our Supreme Court discussed the tort of false imprisonment in this context and stated the following principles:

"If one directs the attention of an officer to what he supposes to be a breach of the peace, and the officer, without other direction, arrests the offender on his own responsibility for what he assumes to be an offence committed in his presence, the person who did nothing more than to communicate the facts to the officer is not liable for false imprisonment, even though the arrest was unlawful. *Taaffe v. Slevin,* 11 Mo.App. 507; *Lark v. Bande,* 4 Mo.App. 186. Thus, where a policeman made an arrest upon an unfounded charge preferred by a third person, and not committed in the presence of the officer, Lord DENMAN said: 'If the defendant directed the police officer to take the plaintiff into custody, he is liable in the present action for false imprisonment; but, if he merely made his statement to the constable, leaving it with the constable to act or not as he thought proper, * * then the defendant will not be liable, at least in this form of action.' *Hopkins v. Crowe,* 7 Car. & P. 373.

One who merely states to an officer what he knows of a supposed offence, even though he expresses the opinion that there is ground for an arrest, 'but without making any charge or requesting an arrest, does not thereby make himself liable in an action for illegal arrest.' *Burns v. Erben,* 1 Robt. 555.

Where, however, a private person induces an officer to arrest another without a warrant, and without an offence having been committed in the view of the officer, he will be liable for false imprisonment unless he justify by showing that the charge was well founded. [citations omitted]."

It is generally recognized today, as stated in *McCord v. Tielsch,* (1975) 14 Wash.App. 564, 566–67, 544 P.2d 56, that:

"[L]iability will not be imposed when the defendant does nothing more than detail his version of the facts to a policeman and ask for his assistance, leaving it to

---

5. Reply Brief, p. 5.

the officer to determine what is the appropriate response, at least where his representation of the facts does not prevent the intelligent exercise of the officer's discretion. *Accord, Snider v. Wimberly*, 357 Mo. 491, 209 S.W.2d 239 (1948); *Davis v. Weil Clothing Co.*, 367 S.W.2d 19 (Mo. App.1963); *Jensen v. Barnett*, 178 Neb. 429, 134 N.W.2d 53 (1965); *Pearson v. Galvin*, 253 Or. 331, 454 P.2d 638 (1969). *See also* 32 Am.Jur.2d *False Imprisonment* § 35 (1967); Annot., 21 A.L.R.2d 643 (1952); 1 F. Harper & F. James, *The Law of Torts* §§ 3.18, 4.11 (1956); Restatement (Second) of Torts § 45A (1965). This rule and its application are founded on public policy, not semantics. As the court explained in *Vimont v. S. S. Kresge Co.*, 291 S.W. 159, 160 (Mo.App.1927), a case cited as authority for ... *Smith v. Drew*, [(1933) 175 Wash. 11, 26 P.2d 1040],

> To hold to the contrary would entirely destroy the right of the humble citizen, to whom the patrolman on the beat or the town marshal or village constable represents the majesty of the law and to whom for many reasons the advice of counsel may be unavailable, to tell his troubles and difficulties to such officer, and to trust to the power and discretion of the legally constituted authorities to secure for him the rights which the law guarantees him.
>
> *Accord, Turner v. Mellon*, 41 Cal.2d 45, 257 P.2d 15, 17–18 (1953)."

We do not think the facts of this case, which are largely undisputed, are capable of giving rise to a reasonable inference that Mrs. Edie induced Officer Kryter to arrest Mrs. Conn. She merely related facts as she understood them to the officer, who then proceeded to question Mrs. Conn in order to ascertain the name of the unidentified shoplifter. No arrest was effected until Mrs. Conn became uncooperative with Officer Kryter and he arrested her for disorderly conduct. She was never arrested for theft. Summary judgment was appropriately entered on the count of false imprisonment.

## Issue II. Slander

■ Again the parties diverge in their respective analyses of the issue, and again Mrs. Conn invokes the probable cause provision of the shoplifter detention statute in support of her position. Without citing any authority to sustain her theory [6], she posits the following argument, as we understand it: Mrs. Edie did not have probable cause to lawfully detain Mrs. Conn on suspicion of theft; therefore, she did not have probable cause to accuse Mrs. Conn of theft, the statement to Officer Kryter necessarily carrying that implication. Mrs. Conn concludes that one may not assert the defense of conditional privilege to utter a defamatory statement imputing criminal activity to another without probable cause to believe it is true. In any event, the conduct of Paul Harris's employees subsequent to Mrs. Conn's arrest is sufficient evidence of actual malice to overcome the conditional privilege.

Paul Harris analyzes the issue in accordance with principles of the law of defamation, irrespective of the shoplifter detention statute, and argues the statement was privileged.

A communication is defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. *Cochran v. Indianapolis Newspapers, Inc.*, (1978) 175 Ind.App. 548, 372 N.E.2d 1211; *Hotel and Restaurant Employees and Bartenders' Internat'l Union v. Julie's Restaurant*, (1968) 142 Ind.App. 242, 233 N.E.2d 784. A false imputation of criminal activity gives rise to a cause of action for defamation so long as the imputation bears a reasonably close relation to the legislative definition of a crime. *Cochran, supra; Gibson v. Kincaid*, (1966) 140 Ind.App. 186, 221 N.E.2d 834.

■ The initial determination whether a statement is defamatory, that is, whether it is capable of conveying a defamatory mean-

---

**6.** We elect to consider the merits of the argument despite Mrs. Conn's failure to comply with the requirements of Ind.Rules of Procedure, Appellate Rule 8.3(A)(7).

ing or implication, is a question of law for the court. *Cochran, supra;* F. Harper and F. James, The Law of Torts § 5.29 (1956). If, however, a statement is ambiguous in that it is reasonably susceptible of either a defamatory or non-defamatory interpretation, a question of fact is presented. *Cochran, supra.* We think Mrs. Edie's statement is ambiguous in the sense related and, as we are reviewing a summary judgment, we must resolve that factual question in favor of Conn, the non-moving party. Therefore, we consider the statement to be defamatory for purposes of this review. In fact, Officer Kryter stated he believed Mrs. Conn was "involved" in the incident and "felt that the lady was with" the shoplifter.

Paul Harris, conceding for the purpose of argument the defamatory character of the communication, contends the statement was protected by a qualified, or conditional, privilege, and there is no showing of malice on its part to overcome such privilege. We agree.

> "The rule concerning a qualified privilege is that a communication made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty, is privileged."

18 I.L.E. *Libel and Slander* § 52 at 475 (1959). *See also, Elliott v. Roach,* (1980) Ind.App., 409 N.E.2d 661; *Indianapolis Horse Patrol, Inc. v. Ward,* (1966) 247 Ind. 519, 524, 217 N.E.2d 626, 628–29; *Weenig v. Wood,* (1976) 169 Ind.App. 413, 434, 349 N.E.2d 235, 248. The defense of conditional privilege in defamation actions is discussed at length in *Elliott, supra,* 409 N.E.2d at 672–73. The privilege has been recognized as extending to protect statements and communications made to law enforcement officers. *See, e.g., Dijkstra v. Westerink,* (1979) 168 N.J.Super. 128, 401 A.2d 1118; *Zakas v. Mills,* (1978) 148 Ga.App. 220, 251 S.E.2d 135; *Faber v. Byrle,* (1951) 171 Kan. 38, 229 P.2d 718; W. Prosser, Handbook of the Law of Torts § 115 at 791 (4th ed. 1971); 50 Am.Jur.2d *Libel and Slander*

§ 214 at 726 (1970). Thus it has been said, "statements made in good faith pursuant to investigation by police of a crime are made in the performance of a public duty and are privileged." *Zakas, supra,* 148 Ga.App. at 220.

As noted in *Elliott, supra,* 409 N.E.2d at 673, conditional privilege, as the term itself implies, is not absolute, and operates only to rebut the inference of malice that is imputed in the absence of privilege.

> "In an appropriate case, a trier of fact may determine the privilege was abused by excessive publication, by use of the occasion for an improper purpose, or by lack of belief or grounds for belief in the truth of what is said. W. Prosser, *supra,* at 792–96. And although the term 'malice' is frequently applied in viewing such acts, it appears 'the essence of the concept is not the speaker's spite but his abuse of the privileged occasion by going beyond the scope of the purposes for which the privilege exists.' *Weenig v. Wood, supra* [169 Ind.App.] at 436, 349 N.E.2d at 249."

*Id.,* 409 N.E.2d at 673.

Mrs. Conn has presented no evidence whatever to support a finding that the publication was not legally justified, i.e., that the privilege was abused by excessive publication, that the occasion was used for an improper purpose, or that Mrs. Edie had no belief or grounds for belief in the truth of what she said. It is Mrs. Conn's burden, as the party opposing the motion for summary judgment, to set forth specific facts showing a genuine issue of the question of malice, *Henderlong Lumber Co., Inc. v. Zinn,* (1980) Ind.App., 406 N.E.2d 310, and this she has not done. She asserts only that Paul Harris's employees acted indifferently toward her *following her arrest for disorderly conduct.* Those assertions, which we accept as true for our present purposes, do not bear on the question of whether Mrs. Edie abused her privilege in uttering the statement suggesting Mrs. Conn's complicity in the theft to Officer Kryter. In the absence of a showing that Mrs. Edie acted

outside the purpose of the privilege, the trial court properly granted summary judgment to Paul Harris on the slander count.

We have reviewed the issues raised by Mrs. Conn and, finding no error, hereby affirm the trial court.

Affirmed.

RATLIFF, P. J., and ROBERTSON, J., concur.