[Civ. No. 24820. Fourth Dist., Div. One. Dec. 13, 1982.]

FRANK HERZOG, Plaintiff and Appellant, v.
"A" COMPANY, INC., Defendant and Respondent.

COUNSEL

Popko, Cornblum & McLean and Bruce Cornblum for Plaintiff and Appellant.

Gray, Cary, Ames & Frye and William S. Boggs for Defendant and Respondent.

OPINION

**WORK, J.**—Frank Herzog's lawsuit claims his previous employer, "A" Company, Inc., tortiously barred him from employment within his career field

when, in writing, it threatened to sue him and any "A" Company competitor employing him. Herzog's complaint alleges "A" Company's letter was sent for the sole purpose of unlawfully depriving him of an opportunity to work within his area of professional expertise.

The trial court found the complaint stated no cause of action, apparently accepting "A" Company's argument its letter was absolutely privileged pursuant to Civil Code section 47, subdivision 2. We reverse the judgment on the pleadings because we believe this absolute privilege only protects communications which threaten litigation for nontortious purposes.[1]

## FACTUAL BACKGROUND

We accept as factual the allegations reasonably inferrable from the pleadings. (*Sullivan* v. *County of Los Angeles* (1974) 12 Cal.3d 710, 714 [117 Cal.Rptr. 241, 527 P.2d 865].) Herzog is a tool and die maker by trade, specializing in designing and manufacturing orthodontic equipment. While employed by "A" Company he signed an "invention and secrecy agreement" containing the following provision: "Employee agrees at all times during the term of his employment, and for a period of three (3) years thereafter, to hold in strictest confidence, and not to disclose to any person, firm or corporation without express authorization of an officer of the Company, any information, manufacturing technique, processes, formulas, developments or experimental work, work in process, business, trade secrets, or any other secret or confidential matter relating to the products, sales or business of the Company, or a division, subsidiary, or affiliate or any successor thereof."

Herzog left "A" Company after seven years and was briefly employed in his specialty field by Ormco. Ormco later asked him to return as a consultant. Learning of this possible future employment, "A" Company's lawyers advised Herzog by letter:

---

[1]All statutory references are to the Civil Code unless otherwise specified.
Section 47, subdivision 2 reads: "A privileged publication or broadcast is one made—
". . . . . . . . . . . . . . . . .
"2. In any (1) legislative or (2) judicial proceeding, or (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure; provided, that an allegation or averment contained in any pleading or affidavit filed in an action for divorce or an action prosecuted under Section 137 of this code made of or concerning a person by or against whom no affirmative relief is prayed in such action shall not be a privileged publication or broadcast as to the person making said allegation or averment within the meaning of this section unless such pleading be verified or affidavit sworn to, and be made without malice, by one having reasonable or probable cause for believing the truth of such allegation or averment and unless such allegation or averment be material and relevant to the issues in such action."

"'A' Company has consulted us about your legal responsibilities concerning confidentiality regarding its proprietary information.

" . . . . . . . . . . . . . . . . . . .

"'A' Company has heard reports that you are considering accepting employment with a competitor. In view of your very broad knowledge concerning 'A' Company's products and processes, it seems unlikely that you could be employed by a competitor in a position which would utilize your skills without an unreasonably great risk of betraying trade secrets and proprietary information of 'A' Company. We strongly urge that you do not put yourself in such a position of risk.

"'A' Company intends to take any and all necessary legal action in order to protect its interests. If it becomes aware that you have been employed by a competitor, it will give immediate consideration to bringing legal proceedings against both you and your employer, to obtain assurance of protection of its interests. . . . 'A' Company considers the *possibility* of your being employed by a competitor as a very serious threat to it and its legitimate interests and it will do everything necessary in order to protect itself.

"This letter is for the purpose of putting you on notice of 'A' Company's position and intentions. We urged that you take this information into account in considering what employment you will accept." (Italics added.) Herzog showed this letter to Ormco. According to a letter from Cecil Benton, president of Ormco (incorporated into the complaint): "If it had not been for [this] letter . . . Mr. Herzog would have been hired as a consultant by Ormco."

Herzog was unable to obtain employment in his specialty field because of "A" Company's threats.

Herzog's attorney wrote the following letter to the "A" Company lawyers:

"Mr. Frank Herzog has retained me regarding the above matter [the October 31, 1977, letter].

"This letter has caused severe problems regarding his ability to work in his profession.

"As a matter of good faith he has had and will have to show the letter to his customers. He cannot invite them to a lawsuit from his former, Company "A" [*sic*].

"He is presently losing $15.00 an hour, the number of hours depending on work available, until this matter is resolved.

"He does not agree he cannot work in his trade without violating the January 26, 1971, agreement with Company "A" [*sic*].

"As far as Mr. Herzog can determine, everything Company "A" [*sic*] is doing, excepting as to their patent rights, is being done by other companies. Their production methods and procedures are common practice within the industry, as well as other industries.

"He states that, after starting to work for Armco,[2] that Company "A" [*sic*] attorneys and Armco attorneys had a discussion regarding his working for Armco; Armco attorneys indicated he could work for Armco.

"An early response would be appreciated." "A" Company did not reply.

Herzog's amended complaint states three causes of action: (1) for declaratory relief asking the agreement between Herzog and "A" Company be declared unenforceable; (2) for money damages resulting from the conduct of "A" Company; and, (3) for injunctive relief.[3]

### Herzog's Action for Damages

"A" Company argues Herzog's actions are based entirely upon the letter of October 31, 1977, and this letter is absolutely privileged under Civil Code section 47, subdivision 2.

Section 47, subdivision 2 provides absolute privilege for documents in judicial proceedings. The privilege has been judicially extended to any communication related to litigation or proposed litigation other than defamation, including intentional infliction of emotional distress and intentional interference with economic advantage. (See, e.g., *Larmour* v. *Campanale* (1979) 96 Cal.App.3d 566 [158 Cal.Rptr. 143]; *Lerette* v. *Dean Witter Organization, Inc.* (1976) 60 Cal.App.3d 573 [131 Cal.Rptr. 592]; *Portman* v. *George McDonald Law Corp.* (1979) 99 Cal.App.3d 988 [160 Cal.Rptr. 505]; and *Rosenthal* v. *Irell & Manella* (1982) 135 Cal.App.3d 121 [185 Cal.Rptr. 92].)

For the reasons following, we hold section 47, subdivision 2's absolute privilege to communications made in pursuit of litigation applies only to litiga-

---

[2] Whether "Armco" is a typographical error, or a firm distinct from Ormco is not relevant to our decision.

[3] The request for injunctive relief has been withdrawn.

tion contemplated in good faith. ▇▇ Accordingly, Herzog's damage claim is not barred at the pleading stage by the absolute privilege of section 47, subdivision 2, because it alleges the October 31, 1977, letter was sent specifically to prevent him from obtaining employment *even though by so doing he would not be in violation of his agreement with "A" Company.*

While the holding in *Lerette* v. *Dean Witter Organization, Inc., supra,* 60 Cal.App.3d 573, expands the scope of section 47, subdivision 2 to communications made before the initiation of litigation, *Lerette* expresses an important caveat: "We recognize that the fact that a suit eventually is filed does not protect all defamatory communications made prior to the filing. But most potential abuse of this privilege for prelitigation communications can be prevented by enforcement of the relevancy requirement . . . [citing *Bradley* v. *Hartford Acc. & Indem. Co.,* 30 Cal.App.3d at p. 826 [106 Cal.Rptr. 718]; *Younger* v. *Solomon,* 38 Cal.App.3d 289, 301-302 (113 Cal.Rptr. 113)]." (*Lerette* v. *Dean Witter Organization, Inc., supra,* 60 Cal.App.3d 573, 578, fn. 6.)

In *Younger* v. *Solomon, supra,* 38 Cal.App.3d 289, the Court of Appeal reversed defendant's summary judgment in an action for abuse of process based on a complaint he filed with the State Bar accusing Younger of ambulance chasing. An interrogatory in a separate judicial proceeding propounded by defendant to plaintiff publicly revealed this complaint, supposedly confidential at that stage. Younger alleged Solomon published this interrogatory solely to damage him. Solomon claimed privilege under section 47, subdivision 2. With more candor than discretion, Solomon supported his motion for summary judgment stating: " 'I further admit . . . that *it is my intention through prosecution of the complaint . . . to attempt to inflict a substantial monetary loss upon [appellant] by recovery of substantial compensatory and punitive damages.* I further admit . . . that I intend to share with and pass on to the State Bar any and all evidence of ambulance-chasing which I may develop against [appellant] through discovery proceedings in this case . . . .' " (*Id.,* at p. 295.) The court found a triable issue of fact, and reversed because the offending interrogatory was not reasonably related to the action in which it was published.

In *Larmour* v. *Campanale, supra,* 96 Cal.App.3d 566, 568, the court stated: "The purpose of the privilege under Civil Code section 47 is to afford litigants the utmost freedom of access to the courts, to preserve and defend their rights [citation] and to protect attorneys during the course of their representation of their clients [citation]. 'It is . . . well established legal practice to communicate promptly with a potential adversary, setting out the claims made upon him, urging settlement, and warning of the alternative of judicial action.' " (Fn. omitted.) In a footnote, *Larmour* quoted comment e to the Restatement Second of Torts, section 586: "As to communications preliminary to a proposed judicial

proceeding the rule stated in this Section applies only when the communication has some relation to a proceeding that is contemplated in good faith and under serious consideration. The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered." (*Larmour, supra*, 96 Cal.App.3d at p. 569, fn. 2.)[4]

We hold a communication not related to a potential judicial action contemplated for legitimate purposes is not protected by the privilege in section 47, subdivision 2.

Here, the offending letter facially exceeds any legitimate purpose when it threatens Herzog and his future employers with suit based merely upon the fact of employment. The 1970 agreement does not purport to restrict Herzog's right to employment, only his right to disclose certain confidential matters related to "A" Company's operations. Further, whatever rights "A" Company may have acquired under the agreement to restrain or sue Herzog cannot bind non-parties.[5]

## ACTION FOR DECLARATORY RELIEF

Section 47, subdivision 2 has no apparent relevance to the request for declaratory relief.

Even assuming Herzog's cause of action for declaratory relief is based entirely on the October 31st letter and that letter is absolutely privileged under section 47, subdivision 2, its contents do not bear on the issue of the employment agreement's enforceability. The declaratory relief action is merely designed to settle disputes between parties as to their respective rights and duties under the initial contract.

[4] In harmony is Restatement Second of Torts, section 871: "One who intentionally deprives another of his legally protected property interest or causes injury to the interest is subject to liability to the other if his conduct is generally culpable and not justifiable under the circumstances." Comment f, illustration 5 states: "A, *who in fact has no claim against B, in bad faith* threatens B who is about to present a dramatic performance, that he will obtain an injunction against the performance unless B pays A $1,000, B makes the payment. A is subject to liability to B for the amount so paid him." (Italics added.)

[5] "A" Company may raise the privilege of section 47, subdivision 2 as an affirmative defense at trial, if it can show the letter was not designed to prevent Herzog from obtaining employment in the area of his professional expertise and was otherwise a good faith communication about prospective litigation contemplated for legitimate purposes.

Judgment reversed.

Brown (Gerald), P. J., and Staniforth, J., concurred.