[No. D011414. Fourth Dist., Div. One. Sept. 20, 1990.]

MICHAEL JOHN FENELON et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
JOHN P. DUNBAR, JR., Real Party in Interest.

COUNSEL

Alhadeff, Lundin & Oggel, Stephen P. Oggel and Brian A. Barnhorst for Petitioners.

No appearance for Respondent.

Anderson & Frank and Robert C. Anderson for Real Party in Interest.

OPINION

**WIENER, Acting P. J.**—In this writ proceeding we decide that a knowingly false report to the police department is not absolutely privileged under Civil Code section 47, subdivision 2.[1] Accordingly, here the court properly overruled the petitioners' demurrer with respect to statements made to the police. As we shall explain, those statements are subject to a qualified privilege under, section 47(3).[2] We therefore deny the petition.

FACTUAL AND PROCEDURAL BACKGROUND

In the underlying action plaintiff John Dunbar sued petitioners Michael and Dolly Fenelon for defamation.[3] Accepting the allegations of the complaint as true, the following scenario is described.

According to Dunbar, the Fenelons induced Amrith Harry Gobin[4] by force, threat of force and/or fraud to inform police and other nonofficial persons that Dunbar had solicited Dr. Fenelon's murder. At all relevant times the Fenelons knew the information was false and had, in fact,

---

[1] Civil Code section 47 reads in part: "A privileged publication or broadcast is one made—
. . . 2. In any (1) legislative or (2) judicial proceeding, or (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 . . . ."
All statutory references are to the Civil Code unless otherwise specified. For convenience, we will refer to section 47, subdivisions 2 and 3, as section 47(2) and 47(3), respectively.

[2] Section 47(3) provides that a privileged publication is one made "[i]n a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or (3) who is requested by the person interested to give the information."

[3] We make no effort to distinguish between the two causes of action—negligence and intentional tort—contained in the form complaint. The pleadings are sufficiently articulate to reflect Dunbar's efforts to seek damages for defamation.

[4] Defendant Gobin did not join in the demurrer and is not a party to this proceeding.

fabricated the allegations in their entirety. The Fenelons published the false report with malice for the sole purpose of damaging Dunbar.[5]

After unsuccessfully demurring to Dunbar's first amended complaint, the Fenelons seek extraordinary relief.

DISCUSSION

I

The Fenelons' petition for a writ of mandate emphasizes the significance of *Williams* v. *Taylor* (1982) 129 Cal.App.3d 745 [181 Cal.Rptr. 423] which holds the section 47(2) absolute privilege applicable to a citizen's report to the police of possible criminal activity by an employee. They say that in overruling their demurrer the trial court failed to perform its responsibilities under *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].

As an intermediate appellate court we are indeed sensitive to this argument.[6] ■ ■■ ■ ■ It is essential that courts act only within the limited powers authorized by law. "Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction. It is not their function to attempt to overrule decisions of a higher court." (57 Cal.2d at p. 455.) After reviewing this single precedent, we became concerned, however, that *Williams* might have overstated the rule regarding the privilege to be accorded police reports. We discerned a need to more carefully balance the competing interests of insuring the free flow of information to law enforcement regarding suspected criminal activity

---

[5] In summarizing the specific allegations of the pleadings we have ignored the information submitted by Dunbar which makes this plot even thicker. The lawsuit comes to us in the pleading stage and our review is limited to the allegations set forth in the form complaint.

[6] Because of the sensitivity to our role, we explored other means of resolving this case. At oral argument we asked counsel whether Penal Code section 148.5, which makes it a misdemeanor to file a knowingly false police report, is the exclusive remedy available to the victims. We also requested additional briefing on equal protection questions raised by the inconsistency between Civil Code section 47.5, which establishes a qualified privilege for false reports of misconduct to a police officer's employing agency, and the absolute privilege Fenelon urges we apply to false crime reports made to police. After reviewing available legislative history and arguments presented by counsel, we conclude neither statute affects the outcome here.

There is nothing in the plain language of Penal Code section 148.5 to suggest the Legislature intended it to serve as an exclusive remedy for false police reports. It is well established that the same act may be both a crime and a tort. Thus, a person convicted of assault and battery may be held liable for exemplary damages in a civil action. (See 1 Witkin, Cal. Criminal Law (2d ed. 1988), Introduction to Crimes, § 12, pp. 15-16.)

Because a decision resting on constitutional grounds is inappropriate where there are other grounds on which to resolve the case, we do not discuss the equal protection argument.

without fear of civil liability and protecting individuals from false accusations of wrongdoing. In light of our concern and our sense that *Williams* failed to examine whether these competing interests should be balanced, we reviewed similar cases throughout the United States. Our intuition was well founded. We discovered a plethora of police report cases from other jurisdictions dealing with the qualified privilege. Before discussing those cases, we briefly review California authority regarding privileged communications.

We are satisfied that sociological studies are unnecessary to establish the fact that a certain percentage of the reports made to the police are inaccurate. There probably are a number of reasons for this. The person making the report may have been inattentive to the events being described or failed to exercise reasonable care in recounting what purportedly occurred. In addition, however, there may be those situations where individuals sparked by anger, vindictiveness, malice or some other less than benevolent human characteristic will file a knowingly false police report for no other reason than to "get even." In these situations—the innocent or negligent error and the intentional inaccuracy—the reports routinely spawn civil actions for defamation which raise the issue of privilege.

As explained in *Slaughter* v. *Friedman* (1982) 32 Cal.3d 149, 155 [185 Cal.Rptr. 244, 649 P.2d 886], section 47 recognizes "(1) [a]n *absolute* privilege for a publication or broadcast made 'In the proper discharge of an official duty' (subd. 1). [¶] (2) [a]n *absolute* privilege for a publication made 'In any (1) legislative or (2) judicial proceeding, or (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable [by a mandate action]. . .' (subd. 2). [¶] [and] (3) [a] *qualified* privilege for a publication made 'In a communication, without malice, to a person interested therein, (1) by one who is also interested, . . .' (subd. 3)." (Italics in original.)

The term "official proceeding" in section 47(2) embraces proceedings "which [resemble] judicial and legislative proceedings, such as transactions of administrative boards and quasi-judicial and quasi-legislative proceedings . . . ." (*McMann* v. *Wadler* (1961) 189 Cal.App.2d 124, 129 [11 Cal.Rptr. 37]; see also Prosser & Keeton, Torts (5th ed. 1984) § 114, pp. 818-819.) "In determining whether an administrative body or agency possesses such quasi-judicial power, the preliminary factors to be determined are '(1) whether the administrative body is vested with discretion based upon investigation and consideration of evidentiary facts, (2) whether it is entitled to hold hearings and decide the issue by the application of rules of law to the ascertained facts and, more importantly, (3) whether its power affects the personal or property rights of private persons . . . .'" (*Tiedemann* v.

*Superior Court* (1978) 83 Cal.App.3d 918, 925 [148 Cal.Rptr. 242], citing *Ascherman* v. *Natanson* (1972) 23 Cal.App.3d 861, 865 [100 Cal.Rptr. 656].) ■ In general, the absolute privilege under section 47(2) is available only where there is an express statutory authorization for the administrative agency to exercise quasi-judicial power. (See *Chen* v. *Fleming* (1983) 147 Cal.App.3d 36 [194 Cal.Rptr. 913] [complaint to State Bar charging attorney misconduct where the State Bar was authorized by statute to discipline attorneys]; *Imig* v. *Ferrar* (1977) 70 Cal.App.3d 48 [138 Cal.Rptr. 540] [complaint to police department charging misconduct by an officer where the police department was authorized by city charter to conduct hearings and discipline its officers]; *Martin* v. *Kearney* (1975) 51 Cal.App.3d 309 [124 Cal.Rptr. 281] [complaint to school principal alleging teacher misconduct where the school board was authorized to discipline school employees]; and *King* v. *Borges* (1972) 28 Cal.App.3d 27 [104 Cal.Rptr. 414] [complaint to Division of Real Estate charging misconduct of broker where the agency was authorized to suspend or revoke brokers' licenses].)

*Williams* v. *Taylor, supra,* 129 Cal.App.3d 745, purported to rely on *Imig* v. *Ferrar, supra,* 70 Cal.App.3d 48, when it applied the section 47(2) absolute privilege in the police report context. Unlike *Imig,* where the report involved allegations of misconduct by a police officer and prompted investigation by a police board empowered to hold hearings and take disciplinary action against its officers, *Williams* involved a report of suspected criminal activity by the president of a car dealership against the manager of its body shop. The report prompted a month-long criminal investigation. The police then referred the matter to the district attorney's office for prosecution. A complaint was filed charging the general manager with grand theft and embezzlement. The prosecution dismissed the grand theft count on the day of trial and the employee was acquitted of embezzlement. (129 Cal.App.3d at p. 750.)

In holding that the employer's report to the police was absolutely privileged, the court emphasized the importance of providing citizens with access to governmental agencies for the purpose of reporting suspected illegal activity without fear of liability for defamation. (129 Cal.App.3d at pp. 753-754.) Ignoring the requirement that the "official proceeding" referred to in section 47(2) be quasi-judicial in nature, the court concluded that "a communication concerning possible wrongdoing, made to an official governmental agency such as a local police department, and . . . designed to prompt action by that entity, is as much a part of an 'official proceeding' as a communication made after an official investigation has commenced." (*Id.*

at p. 753.)[7] The court also ignored substantial authority in other jurisdictions which holds that statements made to police concerning suspected criminal activity are accorded only a qualified privilege.[8]

There is general agreement on the rationale supporting the grant of a qualified privilege in these circumstances. Prosser includes in his classification of privileged "communications to one who may act in the public interest" statements by private citizens to the proper authorities for the prevention or detection of crime. (Prosser & Keeton, Torts (5th ed. 1984) § 115, p. 830.) Stated a different way, " 'Communications which would otherwise be slanderous are protected as privileged, if made in good faith by the injured person in the prosecution of an inquiry regarding a crime which he believes to have been committed upon his property, and for the purpose of detecting the criminal or bringing him to punishment.' . . . The privilege thus accorded is upon the grounds of public policy." (*Hardaway* v. *Sherman Enterprises, Inc., supra,* 210 S.E.2d at p. 364; see also *Jones* v. *Wesley, supra,* 424 So.2d at p. 1111.) Other jurisdictions phrase the rule of qualified privilege in terms similar to section 47(3). " '[A] communication made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty, is privileged.' " (*Conn* v. *Paul Harris Stores, Inc., supra,* 439 N.E.2d at p. 200; see also *Rutherford* v. *Church, supra,* 49 S.W.2d at p. 327; *Towne* v. *Cope, supra,* 233 S.E.2d at pp. 626-627; and *Zarate* v. *Cortinas, supra,* 553 S.W.2d at p. 655.)

---

[7] For similar reasons we reject the analysis of *Forro Precision, Inc.* v. *International Business Machines* (9th Cir. 1982) 673 F.2d 1045.

[8] See *Smith* v. *District of Columbia* (D.C. App. 1979) 399 A.2d 213, 220; *Hardaway* v. *Sherman Enterprises, Inc.* (1974) 133 Ga.App. 181 [210 S.E.2d 363, 364-365]; *Indiana Nat. Bank* v. *Chapman* (Ind.Ct.App. 1985) 482 N.E.2d 474, 479; *Conn* v. *Paul Harris Stores, Inc.* (Ind.Ct.App. 1982) 439 N.E.2d 195, 200; *Rutherford* v. *Church* (1932) 243 Ky. 501 [49 S.W.2d 326, 327]; *Jones* v. *Wesley* (La. Ct. App. 1982) 424 So.2d 1109, 1111; *Packard* v. *Central Maine Power Co.* (Me. 1984) 477 A.2d 264, 268; *Pihl* v. *Morris* (1946) 319 Mass. 577 [66 N.E.2d 804, 807]; *Hutchinson* v. *New England Telephone & Tel. Co.* (1966) 350 Mass. 188 [214 N.E.2d 57, 59]; *Brown* v. *P.N. Hirsch & Co. Stores, Inc.* (Mo. Ct. App. 1983) 661 S.W.2d 587, 591; *Dijkstra* v. *Westerink* (1979) 168 N.J.Super. [401 A.2d 1118, 1120-1121]; *Toker* v. *Pollak* (1978) 44 N.Y.2d 211 [376 N.E.2d 163, 168-169]; *Towne* v. *Cope* (1977) 32 N.C. App. 660 [233 S.E.2d 624, 626-627]; *Paramount Supply Co.* v. *Sherlin Corp.* (1984) 16 Ohio App.3d 176 [475 N.E.2d 197, 202-203]; *Johnson* v. *Inglis* (1942) 190 Okla. 316 [123 P.2d 272, 274]; *Sylvester* v. *D'Ambra* (1947) 73 R.I. 203 [54 A.2d 418, 420]; *Schafroth* v. *Baker* (1976) 276 Ore. 39 [553 P.2d 1046, 1048]; *Bell* v. *Bank of Abbeville* (1946) 208 S.C. 490 [38 S.E.2d 641, 643]; *Zarate* v. *Cortinas* (Tex. Civ. App. 1977) 553 S.W.2d 652, 655; *Bergman* v. *Hupy* (1974) 64 Wis.2d 747 [221 N.W.2d 898, 901]; see also Prosser & Keeton, Torts (5th ed. 1984) § 115, page 830, footnote 69; 53 Corpus Juris Secundum, Libel & Slander, section 83, pages 154-155; and Ablon, *Williams* v. *Taylor: Communications to Police with Absolute Immunity: Revenge Courtesy of Civil Code Section 47(2)* (1986) 18 U.WestL.A. L.Rev. 51, 57-58.

These cases also distinguish between the qualified privilege applicable to reports to law enforcement agencies and the absolute privilege applicable to reports to quasi-judicial bodies. The potential harm to individuals which may result from the absolute privilege is somewhat mitigated by the judicial or quasi-judicial agency's requirement of notice, hearing, and review. Also available are "retarding influences such as false swearing and perjury prosecutions." These safeguards are not present where citizens make statements to the police. (*Dijkstra* v. *Westerink, supra*, 401 A.2d at p. 1121.)

The problem is illustrated in *Toker* v. *Pollak, supra*, 376 N.E.2d 163, a case involving allegedly defamatory oral statements made to an agency investigating plaintiff's qualifications for judicial appointment. The court noted that although the department of investigation had the power to subpoena witnesses, it did not afford the right to a hearing in which plaintiff was permitted to challenge the defendant's allegations. Nor was the agency empowered to grant any form of relief reviewable by appeal in the courts. "In sum, the proceeding before the Department of Investigation lacked all of the safeguards traditionally associated with a quasi-judicial proceeding." (*Toker* v. *Pollak, supra*, 376 N.E.2d at pp. 168-169, citing *Bradley* v. *Hartford Acc. & Indem. Co.* (1973) 30 Cal.App.3d 818 [106 Cal.Rptr. 718].) The court continued: "To clothe with absolute immunity communications made to a body acting in other than a quasi-judicial capacity—communications which because of the absence of a hearing may often go unheard of, let alone challenged, by their subject—would provide an unchecked vehicle for silent but effective character assassination . . . . We believe that the application of a qualified privilege provides the necessary balance by fostering disclosure of information of public import other than that conveyed maliciously." (*Toker* v. *Pollak, supra*, 376 N.E.2d at p. 169.)

■ Although it is vital to the criminal justice system that citizens have free access to report suspected criminal activity without fear of civil liability, the Legislature recognized there must be limits placed on the privilege accorded this type of communication. Thus here, where the report is made solely to the police and not in a quasi-judicial context, to be privileged the statement must be made without malice. We therefore respectfully decline to follow *Williams* v. *Taylor, supra*, 129 Cal.App.3d 745, and conclude the court properly overruled the Fenelons' demurrer as to statements made to the police.[9]

---

[9] We do not reach a different decision because the California Supreme Court cited *Williams* in *Slaughter* v. *Friedman, supra*, 32 Cal.3d 149, 156, as an example of the broad interpretation given to the " 'official proceeding' privilege" involving government officials under section 47(2). The court distinguished those cases from the facts presented in *Slaughter,* and there is no suggestion that the court analyzed, let alone adopted, the reasoning of *Williams.*

DISPOSITION

Petition denied.

Work, J., concurred.

**BENKE, J.**—I dissent. With due respect, I cannot accept the analysis or the result reached by the majority. The majority leaves unmentioned a substantial line of California authority, the Restatement of Torts and leading commentary which are consistent with *Williams* (*Williams* v. *Taylor* (1982) 129 Cal.App.3d 745 [181 Cal.Rptr. 423]). In terms of policy the majority leaves angry parents who complain to principals, disgruntled employees who report to IRS agents, vengeful employers who speak to law enforcement agencies about former employees, and the forgers of building permits, with more protection than citizens reporting crimes to the police.

In *Silberg* v. *Anderson* (1990) 50 Cal.3d 205, 212 [786 P.2d 365], the Supreme Court reiterated the breadth of the privilege provided by Civil Code section 47, subdivision 2: "[I]t applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, *even though the publication is made outside the courtroom and no function of the court or its officers is involved.* [Citations.]" (Italics added.) In particular, in California the privilege applies to statements made preliminary to or in preparation for either civil or criminal proceedings. (*Block* v. *Sacramento Clinical Labs, Inc.* (1982) 131 Cal.App.3d 386, 393-394 [182 Cal.Rptr. 438] (*Block*); *Brody* v. *Montalbano* (1978) 87 Cal.App.3d 725, 733-734 [151 Cal.Rptr. 206] *Izzi* v. *Rellas* (1980) 104 Cal.App.3d 254, 262 [163 Cal.Rptr. 689] (*Izzi* v. *Rellas*); *Lerette* v. *Dean Witter Organization, Inc.* (1976) 60 Cal.App.3d 573, 576 [131 Cal.Rptr. 592] (*Lerette*); *Pettitt* v. *Levy* (1972) 28 Cal.App.3d 484, 489-490 [104 Cal.Rptr. 650] (*Pettitt* v. *Levy*); cf. *Washer* v. *Bank of America* (1943) 21 Cal.2d 822, 831-832 [136 P.2d 297, 155 A.L.R. 1338].)

*Block, Izzi* v. *Rellas, Lerette, Brody* and *Pettitt* v. *Levy* are all consistent with the Restatement Second of Torts, section 587, which states: "A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish defamatory matter concerning another *in communications preliminary to a proposed judicial proceeding,* or in the institution of or during the course and as part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding." (Italics added.)

Under the foregoing cases and the Restatement, application of the privilege does not turn upon the official powers of the particular person to whom an offending communications has been made. To suggest, as the majority does, that the privilege applies only when a communication has been made to a quasi-judicial or quasi-legislative body ignores the fact that in *Pettitt* the privilege was applied to communications between alleged conspirators, that in *Lerette* the privilege was applied to a letter sent to a bank officer, that in *Izzi* v. *Rellas* the recipient was a private attorney, and that in *Block* a district attorney received the information which caused the plaintiff's damage.

Rather than focusing on the powers of the person who receives a communication, the California cases and the Restatement require that we look to the aims of the communication. (See *Herzog* v. *"A" Company, Inc.* (1982) 138 Cal.App.3d 656, 661 [188 Cal.Rptr. 155].) If the communication is in anticipation of or designed to prompt official proceedings, the communication is protected. (*Ibid., Pettitt* v. *Levy, supra,* 28 Cal.App.3d at pp. 490-491; Rest.2d Torts, § 587.)

Not only is the majority's focus on the immediate recipient of a communication misplaced, its definition of "official proceedings" is unduly narrow. The majority relies upon *Toker* v. *Pollack* (1978) 44 N.Y.2d 211 [376 N.E.2d 163, 168-169] (*Toker*), for the proposition that Civil Code section 47, subdivision 2, only protects communications to agencies whose actions are governed by requirements of notice, hearing and review. As the majority notes, in *Toker* the New York court held that communications made to an agency investigating an attorney's qualification for judicial office were not absolutely privileged. The majority, however, fails to discuss *O'Shea* v. *General Telephone Co.* (1987) 193 Cal.App.3d 1040, 1047-1048 [238 Cal.Rptr. 715]. In *O'Shea* the plaintiff had been discharged from his employment at a telephone company. He then applied to become a California Highway Patrolman. The highway patrol, as required by Government Code section 1031, subdivision (d), conducted a thorough background investigation. In the course of that investigation, the telephone company explained its version of the plaintiff's termination to the highway patrol. Relying in part on *Williams,* the court held the telephone company's statements to the highway patrol were absolutely privileged. "The CHP, a governmental entity [citations], was conducting this thorough background investigation regarding appellant's fitness when the allegedly defamatory statements were obtained. Such inquiries and responses are protected by Civil Code section 47, subdivision 2. Even unsolicited communications from citizens to governmental agencies have been held protected by the absolute privilege of Civil Code section 47, subdivision 2. [Citations.] The rationale of those

cases is obvious in the case before us; it is to encourage the utmost freedom of communication between citizens and public authorities. The Legislature has wisely required a thorough background investigation of the character of those who wish to be peace officers. It is essential that former employers of those considered for peace officer positions feel free to discuss in detail the characteristics of their former employees, now being considered for the extremely demanding tasks undertaken by the peace officers of this state." (*O'Shea* v. *General Telephone Co., supra*, 193 Cal.App.3d at p. 1048.)

In my view it is difficult to reconcile the result reached in *O'Shea* with the holding in *Toker*. More importantly, I believe *O'Shea* is a more accurate statement of California law. (See, e.g., *Bledsoe* v. *Watson* (1973) 30 Cal.App.3d 105, 108-109 [106 Cal.Rptr. 197]: letter to city treasurer demanding treasurer withhold payment to plaintiff not actionable as interference with contract.)

I also note that although the majority implies the holding in *Williams* is aberrational, at least one commentator of substantial reputation suggests it represents the better view. "The immunity extends to every step in the proceeding until final disposition, although it does not cover publications made before commencement or after termination. Conversations preliminary to the proceeding have given some difficulty. Although there is some authority to the contrary, the better view seems to be that an informal complaint to a prosecuting attorney or a magistrate is to be regarded as an initial step in a judicial proceeding, and so entitled to an absolute, rather than a qualified immunity." (*Prosser and Keeton on Torts* (5th ed. 1984) § 114, pp. 819-820, fns. omitted; see also *Ducosin* v. *Mott* (1982) 292 Or. 764 [642 P.2d 1168, 1169]: report to medical examiner about potential homicide absolutely privileged; *Cushman* v. *Edgar* (1980) 44 Or.App. 297 [605 P.2d 1210, 1212].) I do not believe any principled distinction can or should be made between a citizen who goes to the police department rather than the district attorney's office with information about commission of a crime.

In sum, I do not think any departure from the holding in *Williams* or from California authority is warranted. There is no legal or logical reason to deny citizens a channel of communication to law enforcement agencies which is unfettered by the fear of later civil litigation. Indeed, in the hierarchy of priorities, such communication warrants at least as much protection as other communiques which, while certainly important to the parties involved, do not involve the broader societal interest in reporting criminal

activity. In this regard I note the underlying criminal investigation in this case is still open. The potential chilling effect on it and other even more sensitive cases is, to me, unacceptable.